**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| AES-APEX EMPLOYER SERVICES, INC. And AEX-APEX EMPLOYER SOLUCTIONS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 13-14519 |
| v. | ) ) ) | (Formerly Case No. 2013-136506 |
| DINO ROTONDO, RICHARD MARK, and UNITED STATES, DEPARTMENT OF TREASURY – INTERNAL REVENUE SERVICE, | ) ) ) ) ) | *Cir. Ct., Oakland County, Michigan)* |
| Defendants | ) | |

**UNITED STATES OF AMERICA'S NOTICE OF REMOVAL TO THE
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
MICHIGAN**

PLEASE TAKE NOTICE that action styled AES-APEX EMPLOYER SERVICES, INC, v. ROTONDO et al., Case No. 13-136506-CK, now pending in the Circuit Court, Oakland County, Michigan, is removed to the United States Court for the Eastern District of Michigan, by and on behalf of the defendant United States of America.  This action is removable pursuant to the provisions of 28 U.S.C. § 1442(a)(1) as it is brought against an agency of the United States, and 28 U.S.C. § 1444, as it appears to be an action in interpleader brought against the United States under the provisions of 28 U.S.C. § 2410.

Copies of the Complaint, together with attachments, constituting all non-duplicative process and pleadings available from the Circuit Court,  Oakland County, Michigan as of the date this notice, are attached as required by 28 U.S.C. § 1446(a).  No prior removal of the action has been attempted.

10660018.1

This notice of removal is filed in accordance with the procedures of 28 U.S.C. § 1446, and

the removal of the action is timely under the provisions of 28 U.S.C. § 1446(b).

KATHRYN KENEALLY
Assistant Attorney General
Tax Division

/s/ Patrick B. Gushue_____
PATRICK B. GUSHUE
JULIE C. AVETTA
Trial Attorneys, Tax Division
United States Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 307-6010
Facsimile:   (202) 514-5238
Email:  Patrick.B.Gushue@usdoj.gov

Of Counsel:
BARBARA L. McQUADE
United States Attorney

10660018.1

**CERTIFICATE OF SERVICE**

I CERTIFY that service of the foregoing NOTICE OF REMOVAL TO THE UNITED

STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN has this 29th

day of October, 2013, been made upon the following by depositing a copy in the United States

mail, postage prepaid, addressed to:

David B. Timmis, Esq.
Timothy J. Connaughton
1450 W. Long Lake Road, Suite 100
Troy, MI  48098

Dino Rotondo
5800 Belgrave Ave.
West Bloomfield, MI 48323

Richard Mark
5060 Bloomfield Glen
West Bloomfield, MI 48323


*/s/ Patrick B. Gushue*_____
PATRICK B. GUSHUE
Trial Attorney, Tax Division

10660018.1

This case has been designated as an eFiling case. To review a copy of the
Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/efiling.

Original - Court
1st copy - Defendant

2nd copy - Plaintiff
3rd copy - Return

| Approved, SCAO | | | | |
|---|---|---|---|---|
| STATE OF MICHIGAN<br>6th JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | | SUMMONS AND COMPLAINT | | CASE NO.<br>2013-136506-CK-CK<br>JUDGE MCMILLEN |

Court address: 1200 N. Telegraph Road, Dept. 404, Pontiac, MI 48341

Court telephone no. 248-858-1000

Plaintiff name(s), address(es) and telephone no(s).
AES-APEX EMPLOYER SERVICES, INC. and
AES-APEX EMPLOYER SOLUTIONS, INC.

v

Defendant name(s), address(es), and telephone no(s).
DINO ROTONDO, 2800 Belgrave Ave., West Bloomfield,
MI 48323 and

RICHARD MARK, 5050 Bloomfield Glen, West
Bloomfield, MI 48332 and

UNITED STATES, DEPARTMENT OF TREASURY -
INTERNAL REVENUE SERVICE, 211 W. Fort Street,
Ste. 2001, Detroit, MI 48226.

Plaintiff attorney, bar no., address, and telephone no.
DAVID B. TIMMIS  P48539
1450 W. Long Lake Road, Ste. 100
Troy, MI 48098
248-312-2800

**SUMMONS**   NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan, you are notified:

1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). MCR 2.111(C)
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

Issued
OCT 01 2013

This summons expires
JAN 20 2014

Court clerk
Lisa Brown

*This summons is invalid unless served on or before its expiration date.*
This document must be sealed by the seal of the court.

**COMPLAINT** Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.

Family Division Cases
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

General Civil Cases
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☒ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in  Oakland County Circuit  Court.
The action ☒ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no.<br>13-135557-CK | Judge<br>Phyllis C. McMillen | Bar no.<br>P20180 |
|---|---|---|

**VENUE**

Plaintiff(s) residence (include city, township, or village)
Sterling Heights, Michigan

Defendant(s) residence (include city, township, or village)
West Bloomfield, Michigan

Place where action arose or business conducted
West Bloomfield, Michigan

Date
10/01/2013

Signature of attorney/plaintiff  David B. Timmis

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (3/08)  SUMMONS AND COMPLAINT    MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

Received for Filing Oakland County Clerk 2013 OCT 01 PM 04:28

OCT-10-2013   08:04        IRS CHIEF COUNSEL

| PROOF OF SERVICE | **SUMMONS AND COMPLAINT** Case No. |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2), and that: (notarization not required). | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required). |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the Summons and Complaint

_____ on the defendant(s).

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

| Service fee | Miles traveled | Mileage fee | Total fee | Signature |
|---|---|---|---|---|
| $ | | $ | $ | |

Title _____

_____ County, Michigan.

Subscribed and sworn to before me on _____
Date

My commission expires: _____    Signature _____
Date                                                Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

on behalf of _____

_____
Signature



Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

This case has been designated as an eFiling case. To review a copy of the Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/efiling.

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

AES-APEX EMPLOYER SERVICES, INC.
and AES-APEX EMPLOYER SOLUTIONS,
INC.,

           Plaintiffs,

v.

DINO ROTONDO, RICHARD MARK, and
UNITED STATES, DEPARTMENT OF
TREASURY – INTERNAL REVENUE SERVICE,

           Defendants.

2013-136506-CK
JUDGE MCMILLEN

Case No.: 13-     -CK
Honorable:

---

DAVID B. TIMMIS (P40539)
TIMOTHY J. CONNAUGHTON (P60345)
Attorneys for Plaintiffs
1450 W. Long Lake Road, Ste. 100
Troy, MI 48098
248-312-2800

---

## COMPLAINT FOR INTERPLEADER AND FOR DECLARATORY JUDGMENT

There is another civil action pending between certain of the parties
included in the present matter, which arises out of some of the
same transactions and/or occurrences that are referenced
in the present Complaint, which matter is pending in the
Oakland County Circuit Court before the Honorable
Phyllis C. McMillen and is captioned as follows: Mark
v Apex Administrative Services, LLC; People Plus
Management Services Group, LLC and Dino Rotondo,
Case No. 13-135567-CK

NOW COME the Plaintiffs, **AES-APEX EMPLOYER SERVICES, INC.** and **AES-APEX EMPLOYER SOLUTIONS, INC.**, by and through their attorneys, VANDEVEER GARZIA, P.C., and in their COMPLAINT FOR INTERPLEADER AND FOR DECLARATORY JUDGMENT, state as follows:

1.      Plaintiff, **AES-APEX EMPLOYER SERVICES, INC.**, is a Michigan

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

corporation, with its principal place of business in the City of Sterling Heights, County of Macomb, State of Michigan, which conducts business in the County of Oakland, State of Michigan.

2. Plaintiff, **AES-APEX EMPLOYER SOLUTIONS, INC.**, is a Michigan corporation, with its principal place of business in the City of Sterling Heights, County of Macomb, State of Michigan, which conducts business in the County of Oakland, State of Michigan.

3. Defendant, **DINO ROTONDO** (hereinafter "**ROTONDO**"), is an individual who resides and conducts business in the County of Oakland, State of Michigan.

4. Defendant, **RICHARD MARK** (hereinafter "**MARK**"), is an individual who resides and conducts business in the County of Oakland, State of Michigan.

5. Defendant, **UNITED STATES OF AMERICA, DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE** (hereinafter "IRS"), is a governmental agency, which possess sovereign immunity, which immunity has been waived with respect to interpleader lawsuits relating to real or personal property on which the United States has or claims a lien, which has also consented to the jurisdiction of state courts throughout the United States of America. 28 USC §2410(a).

6. Jurisdiction in this matter is proper based on the Court's general subject matter jurisdiction.

7. Venue is proper in this Court for the reason that the facts and circumstances that are the subject of this matter arose from transactions

2

or occurrences which occurred in whole or in part in the County of Oakland, State of Michigan, and the Defendants reside and/or conduct business in the County of Oakland, State of Michigan.

8. The amount in controversy exceeds $25,000, exclusive of costs, interest and attorney fees.

## GENERAL ALLEGATIONS

9. Defendant, ROTONDO, is an individual who operated two businesses, Apex Administrative Services, LLC and People Plus Management Services Group, LLC, which provided Professional Employer Organization (PEO) services to numerous clients.

10. Defendant, MARK, is an individual who provided financing and/or funding to ROTONDO'S businesses, Apex-Administrative Services, LLC and People Plus Management Services Group, LLC, in exchange for an interest in said businesses, as well as applicable security agreements and personal guarantees from ROTONDO.

11. Despite the infusion of capital and/or funding from MARK, ROTONDO'S businesses, Apex-Administrative Services, LLC and People Plus Management Services Group, LLC, experienced financial difficulties, which resulted in the commencement of negotiations between ROTONDO and Mr. David Otto, the principal and owner of the Plaintiffs, AES-APEX EMPLOYER SERVICES, LLC and AES-APEX EMPLOYER SOLUTIONS, LLC, (hereinafter collectively referred to as "AES-APEX"),

3

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

which resulted in two AGREEMENTS FOR PURCHASE OF ASSETS, between

A. APEX ADMINISTRATIVE SERVICES, LLC; AS HOLDINGS GROUP, LLC; PINNACLE HR SERVICES, LLC; AS SOUTH, LLC; and APEX HR SERVICES, LLC, all of which conduct business under the registered assumed name of "PEOPLE PLUS" ("SELLERS")

AND

AES-APEX EMPLOYER SERVICES, INC. ("PURCHASER") (a copy of which is attached hereto as Exhibit A)

B. APEX ADMINISTRATIVE SERVICES, LLC; AS HOLDINGSGROUP, LLC; PINNACLE HR SERVICES, LLC; AS SOUTH, LLC; and APEX HR SERVICES, LLC, all of which conduct business under the registered assumed name of "PEOPLE PLUS" ("SELLERS")

AND

AES-APEX EMPLOYER SOLUTIONS INC. ("PURCHASER") (a copy of which is attached hereto as Exhibit B)

12. Each of the aforementioned AGREEMENTS FOR PURCHASE OF ASSETS, include as EXHIBIT 9.2, a CONSULTING AGREEMENT, which calls for the payment of "Consulting Fees" by the Plaintiffs to ROTONDO based on the gross profits derived by the Plaintiffs from providing PEO services to customers acquired from the Sellers listed in the above-referenced AGREEMENT FOR PURCHASE OF ASSETS.

13. Despite the clear and unambiguous language included in the AGREEMENTS FOR PURCHASE OF ASSETS, as well as the related CONSULTING AGREEMENTS, each of the Defendants have asserted claims with regard to the "Consulting Fees" that are contemplated in the CONSULTING AGREEMENTS.

4

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

14. As to Defendant, **MARK**, he has filed Writs of Garnishment against both Plaintiffs in the amount of $1,350,000 in connection with a lawsuit that he filed in the Oakland County Circuit Court against **ROTONDO** and his businesses, which is captioned as follows:

> RICHARD MARK, Plaintiff
>
> vs          Case No: 13-135567-CK
>             Hon. Phyllis C. McMillan
>
> APEX ADMINISTRATIVE SERVICES, LLC,
> PEOPLE PLUS MANAGEMENT SERVICES
> GROUP, LLC AND DINO ROTONDO, Defendants.

15. As to the IRS, it originally served a Notice of Levy on April 2, 2013 on Plaintiff, **AES-APEX EMPLOYER SOLUTIONS, INC.**, relating to ROTONDO as the delinquent tax payer, seeking a "Total Amount Due" of $189,472.52, for which the IRS has been paid by the Plaintiffs the amount of $38,414.54.

16. Following the issuance of the first Notice of Levy, the IRS issued a second Notice of Levy on September 10, 2013, against Plaintiff **AES-APEX EMPLOYER SOLUTIONS, INC.**, relating to delinquent taxpayer ROTONDO, claiming a "Total Amount Due" of $744,613.98.

## COUNT I – INTERPLEADER

17. Plaintiffs restate and incorporate by reference paragraphs 1 through 16 of this Complaint, as if same were set forth word for word herein.

18. MCR 3.603(A)(1) provides as follows:

> Persons having claims against the Plaintiff may be joined as
> Defendants and required to interplead when their claims are
> such that the Plaintiff is or may be exposed to double or multiple

5

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

liability. It is not grounds for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical, but are adverse to an independent of one another, or that the Plaintiff denies liability to any or all of the claimants in whole or in part.

19. The Plaintiffs have paid "Consulting Fees" consistent with the CONSULTING AGREEMENTS which are appended to the aforementioned AGREEMENT FOR PURCHASE OF ASSETS for the months of April, 2013, May, 2013 and June, 2013.

20. The Plaintiffs have held in escrow the "Consulting Fees" relating to July, 2013, August, 2013 and September, 2013.

21. Further, the Plaintiff seeks permission to pay "Consulting Fees" which continue to accrue into the Court to permit the Defendants to litigate their respective interests in and/or claims to the property, to allow the Court to make an appropriate determination with regard to said funds and/or an appropriate disposition of said funds to prevent the Plaintiffs from being subjected to the risk of "double or multiple liability."

WHEREFORE, the Plaintiffs, AES-APEX EMPLOYER SERVICES, INC. and AES-APEX EMPLOYER SOLUTIONS, INC., respectfully request that this Honorable Court enter an Order and/or Judgment permitting the Plaintiffs to pay the referenced "Consulting Fees," as well as those "Consulting Fees" which accrue and/or become due during the pendency of this action, into the Court for the purpose of interpleading said funds, to allow the Defendants to litigate their respective interests in and/or claims to said funds, and to permit the Court to appropriately determine the interest of each of Defendant in said funds.

6

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

## COUNT II – DECLARATORY JUDGMENT

22. Plaintiffs restate and incorporate by reference paragraphs 1 through 21 of this Complaint, as if same were set forth word for word herein.

23. MCR 2.605(A)(1) provides as follows:

> In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

24. For those "Consulting Fees" which do not accrue and/or become due during the pendency of the present action, the Plaintiffs seek a declaratory judgment directing the Plaintiffs to pay said "Consulting Fees" to the appropriate party, again, to avoid the possibility of "double or multiple liability.'

WHEREFORE, the Plaintiffs, AES-APEX EMPLOYER SERVICES, INC. and AES-APEX EMPLOYER SOLUTIONS, INC., respectfully request that this Honorable Court enter an Order and/or Declaratory Judgment which specifically sets forth the Defendants' respective rights to the referenced "Consulting Fees" for those "Consulting Fees" which do not accrue or become payable during the pendency of the present action.

Respectfully submitted,

BY: _____
DAVID B. TIMMIS  P40539
TIMOTHY J. CONNAUGHTON  P60345
Attorney for Plaintiffs
1450 W. Long Lake Road, Ste. 100
Troy, MI 48098
248-312-2800

Dated: October 1, 2013

7

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

EXHIBIT A

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

## AGREEMENT FOR PURCHASE OF ASSETS

### BETWEEN

**APEX ADMINISTRATIVE SERVICES, LLC; AS HOLDINGS GROUP, LLC; PINNACLE HR SERVICES, LLC;AS SOUTH, LLC; and APEX HR SERVICES, LLC, all of which conduct business under the registered assumed name of "PEOPLE PLUS" ("SELLERS")**

### AND

### AES - APEX EMPLOYER SERVICES, INC. ("PURCHASER")

THIS AGREEMENT FOR PURCHASE OF ASSETS ("Agreement"), dated as of this 28th day of March, 2013 ("Effective Date"), is executed by and among AES - APEX EMPLOYER SERVICES, INC., a Michigan corporation ("Purchaser"), with offices at 13486 Canal Road, Sterling Heights, Michigan 48313; APEX ADMINISTRATIVE SERVICES, LLC, a Michigan limited liability company, AS HOLDINGS GROUP, LLC, a Michigan limited liability company, PINNACLE HR SERVICES, LLC, a Michigan limited liability company, AS SOUTH, LLC, a Michigan limited liability company, and APEX HR SERVICES, LLC, a Michigan limited liability company, all of which conduct business under the registered assumed name of "PEOPLE PLUS" (individually, a "Seller", and collectively, the "Sellers"), all of whom have offices at 2701 Troy Center Drive, Ste. 400, Troy, MI 48084; the persons and entities signing below to guarantee certain obligations of Seller (individually, a "Guarantor", and collectively, "Guarantors"), whose address is 2701 Troy Center Drive, Ste. 400, Troy, MI 48084; hereinafter, the "parties", based upon the following facts and circumstances, all of which are true and incorporated into this Agreement:

WHEREAS, Purchaser desires to purchase, and Sellers desire to sell, certain of Seller's assets on the terms and conditions hereinafter set forth; and

WHEREAS, on even date herewith, Purchaser's affiliates have entered into certain agreements to purchase additional customer accounts from one or more Sellers (collectively, the "Related Purchase Agreements").

NOW, THEREFORE, the parties hereto agree as follows:

1.    Sale of Assets

    1.1    In reliance upon the warranties, representations and covenants contained in this Agreement and on the terms and subject to the conditions of this Agreement, each Seller hereby agrees that it will, in the manner specified in Section 1.3 of this Agreement, sell, convey, transfer, assign and deliver to Purchaser, and Purchaser hereby agrees that it will purchase all of the customers identified on Schedule 1.1(A) (hereinafter referred to as the "Customer List"), including but not limited to certain equipment, goodwill, an assignment of all rights, title and interest in all noncompetition and nonsolicitation agreements in favor of such Seller and each Guarantor, all of such Seller's intangible data, information, documentation and materials associated with the Customers and Customer List, and the tangible assets identified on Schedule 1.1(B). The Customer

DSK
3-28-13

List identified on Schedule 1.1(A) and the assets identified on Schedule 1.1(B) are sometimes collectively referred to herein as the "Assets".

1.3     Sellers' transfer and sale of the Assets hereunder shall be effected by the delivery, by Sellers to Purchaser, of such bills of sale with covenants of warranty, endorsements, assignments and other good and sufficient instruments of sale, transfer, assignment and conveyance and all consents of third parties necessary thereto (all in form and substance satisfactory to Purchaser's counsel and with all required federal and state documentary and transfer stamps affixed) as shall be required, or as may be desirable in order to effectively vest in Purchaser, good, indefeasible, marketable and merchantable title to the Assets, free and clear of all security interests, liens, claims or encumbrance of any nature or kind whatsoever (herein the "Transfer Documents"). Each Seller covenants that it will, upon the request of Purchaser execute, acknowledge and deliver, all such additional documents as may be reasonably required by Purchaser, in order more effectively to sell, convey, transfer, assign and deliver to Purchaser any of the Assets or to carry out the intention and purpose of this Agreement and the transactions contemplated hereby and to evidence the ownership by Purchaser of the Assets.

2.     Agreement to Purchase and Purchase Price.

In consideration of the Sale of the Assets as herein provided, Purchaser hereby agrees that it will purchase the Assets, and will in the manner provided in Section 4, pay to Sellers an aggregate of Two Thousand and No/100 Dollars ($2,000.00) (the "Purchase Price"). The allocation of purchase price shall be determined by Purchaser.

3.     Non-Assumption of Liabilities.

Purchaser shall not, does not and will not assume or agree to pay, perform or discharge any liability or obligation of any Seller, including without limiting the generality of the foregoing, any liability or obligation arising out of, incurred in connection with, related to or created as a result of (i) this Agreement or the sale of the Assets pursuant hereto or (ii) any liability, obligation, occurrence, transaction or agreement of any nature, whether or not such liability, obligation, occurrence, transaction or agreement now exists or arises, is incurred or is created after the date hereof.

4.     Payment of Purchase Price; Closing.

The Purchase Price shall be paid to the Sellers at Closing, which shall occur within ten (10) days following satisfaction or Purchaser's written waiver of every contingency set forth in this Agreement, including but not limited to discharge of all federal, state, municipal and other tax liens that encumber or pose a threat of encumbering title to the Assets, as determined in the sole discretion of Purchaser.

2

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

5.     Representations, Warranties & Agreements of each Seller and Guarantor:

The Sellers and Guarantor, jointly and severally, represent, warrant and agree as follows:

5.1     Each Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Michigan. Each Seller has full power and lawful authority to own the Assets to be sold hereunder and to engage in the business in which it is engaged.

5.2     Dino Rotondo is authorized to sign this Agreement on behalf of each Seller, and this Agreement constitutes a valid obligation legally binding on each Seller in accordance with its terms and the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby (i) are permissible under the Articles of Organization and Operating Agreement of each Seller, (ii) have been duly and validly authorized by all necessary and appropriate corporate action, (iii) does not and will not result in a breach of or a default under any agreement, license or other obligation of each Seller relating to the operation or ownership of such Seller or any of the Assets to be acquired hereunder, or, (iv) will not violate any law, rule or regulation of any agency or governmental body.

5.3     Each Seller is entitled to full and exclusive possession of the Customer List. Attached hereto as Schedule 1.1(A) are true and correct copies of each customer account constituting the Customer List, and attached hereto as Schedule 1.1(B) is a true and correct inventory of all other Assets.

5.4     Each Seller to the best of its knowledge and belief is not in default, or alleged to be in default, under any agreement, license or obligation relating to the operation of its business; and no other party to any such agreement, license, obligation is in default thereunder; and there exists no condition or event which, after notice or lapse of time or both, would constitute a default by any party to any such agreement, license or obligations.

5.5     Each Seller and its employees have all governmental licenses and permits (federal, state and local) necessary for the conduct of the business as now carried on by the Sellers and such licenses are in full force and effect. To the best of such Seller's knowledge and belief no violations are or have been recorded in respect of any such licenses or permits and no proceeding is pending or threatened concerning the revocation or limitation of any such license or permit.

5.6     Each Seller to the best of its knowledge and belief has complied with all laws, rules, regulations and orders applicable to the operation of the business conducted by such Seller and the Seller has not taken any action, individually or in concert, or failed to take any action which action or failure will or would, in any way, preclude or prevent Purchaser from utilizing the Assets after the Closing in the same manner as theretofore operated by the Seller.

3

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

5.7     Except as set forth in Schedule 5.7, which shall be delivered to Purchaser in the manner set forth in Section 10.2, below, each Seller to the best of its knowledge and belief is not engaged in or threatened with any legal proceeding and there are no proceedings, claims or investigations of any kind pending or threatened against such Seller relating to or affecting any of the Assets and the Seller knows of no basis or grounds therefor. Except as set forth on Schedule 5.7, to the best of the Seller's knowledge and belief there are no outstanding adjudications or orders of any agency or tribunal against the Seller relating to its prospects or affecting any of the Assets.

5.8     Each Seller may sell the Assets to Purchaser without the consent or approval of any person, corporation, partnership, governmental authority or other entity, or shall obtain all requisite consents prior to Closing.

5.9     All Assets will be transferred to Purchaser free and clear of all liens or claims. As of the date of Closing, all federal, state, municipal and other taxes that encumber or pose a threat of encumbering title to those Assets will have been satisfied or discharged to Purchaser's satisfaction, including but not limited to any and all unemployment tax liability(ies) and all deficit balance(s) in Seller's account with any state, including but not limited to the Seller's account with the Michigan Unemployment Insurance Agency (MUIA). Schedule 5.9, which shall be delivered to Purchaser in the manner set forth in Section 10.2, below, shall be a true and complete list of Seller's federal, state, municipal and other tax liens, liabilities and penalties as of the date hereof. Any such liens, liabilities and penalties that remain unpaid as of the date of Closing shall be paid from the Purchase Price or, at Purchaser's sole option, as provided under Section 6.1, below.

5.10     Commencing with the date of this Agreement and continuing through the date of Closing, there will be no bank debt, borrowings, leases, loans, encumbrances, liens, attachments, contractual obligations, or amounts due third parties, or arising in the ordinary course of business as relates to the Assets, or directly related to this proposed transaction.

5.11     No representation or warranty by any Seller contained in this Agreement or made hereunder contains, or will contain, any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.

5.12     Each Seller further warrants and represents that it will continue to operate in the ordinary course of business and maintain all Assets until they are transferred to Purchaser. The Assets will be maintained on a normal basis through the date of Closing, and there will be no changes in methods or procedures for billing, collecting, or recording customer accounts receivable or reserves for doubtful accounts, except upon Purchaser's prior written consent.

5.13     Each Seller has made the foregoing representations and warranties with the knowledge and expectation that Purchaser is placing complete reliance on them.

4

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

6. <u>Indemnification</u>

6.1 Each Seller and Guarantor covenant and agree that, regardless of any investigation at any time made by or on behalf of Purchaser or of any information Purchaser may have in respect thereof, the Sellers and Guarantors will jointly and severally indemnify and hold harmless Purchaser from, for and against any loss, damage, liability or deficiency (including without limitation, reasonable attorneys' fees and other costs and expenses incident to any suit, action, investigation or other proceeding) arising out of or resulting from, and will pay Purchaser on demand the full amount of any sum which Purchaser may pay or become obligated to pay on account of, (i) any false representation or the breach of any warranty made by any Seller and/or any of Sellers' Affiliate(s) under this Agreement, and Related Agreement, or any closing documents; (ii) any federal, state, local or other tax of any nature existing prior to the date of Closing and owed by any Seller and/or any of Sellers' Affiliate(s); (iii) any failure of any Seller and/or Sellers' Affiliate(s) to perform or observe any term, provision, covenant, agreement or condition under the Letter of Intent, this Agreement, any Related Agreement, or any closing documents to be performed or observed by any Seller and/or Sellers' Affiliate(s); (iv) any claim, litigation or other action of any nature arising out of any act performed, transaction entered into or state of facts suffered to exist by any Seller and/or Sellers' Affiliate(s) prior to the date of Closing; and (v) without limiting the generality of the foregoing, any claim of any employee of any Seller and/or Sellers' Affiliate(s), or of any other person, arising out of or relating to any employee stock option, bonus retirement, profit sharing, pension or other similar plan of any Seller and/or Sellers' Affiliate(s) or the operation or termination of any such plan. In addition, all Sellers and Guarantor will jointly and severally indemnify and hold harmless Purchaser from, for and against any costs and expenses (including actual attorneys' fees) which Purchaser incurs to enforce the indemnification obligations of the Sellers and Guarantor hereunder. Purchaser shall have a right to offset such losses, damages, liabilities, deficiencies, costs, expenses and attorneys' fees against any sums owed by Purchaser or Purchaser's Affiliates to the Seller and/or any Guarantor. For the purposes of this Agreement, an "<u>Affiliate</u>" of a party shall mean any person or entity controlled by or under common control with such party or the party's principal.

6.2 Purchaser covenants and agrees that Purchaser will indemnify and hold harmless the Seller from, for, and against any loss, damage, liability or deficiency (including without limitation, reasonable attorneys' fees and other costs and expenses incidental to any suit, action, investigation or other proceeding) arising out of or resulting from, and will pay the Sellers on demand the full amount of any sum which the Sellers may pay or become obligated to pay on account of (i) any inaccuracy in any representation or the breach of any warranty made by Purchaser hereunder; (ii) any failure of Purchaser to perform or observe any term, provision, covenant, agreement or condition hereunder on the part of Purchaser to be performed or observed; and (iii) Purchaser shall be responsible for, and shall indemnify and hold Seller harmless from and against any claim, litigation or other action of any nature arising out of any customer services performed by Purchaser, its agents or representatives after the date of Closing, or any change in the Customer contracts assumed hereunder which are implemented by Purchaser.



5

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

7. Representations and Warranties by Purchaser

Purchaser represents, warrants and agrees as follows:

7.1 Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of Michigan with full power and authority to purchase and acquire the Assets as herein provided.

7.2 The execution, delivery and performance of this Agreement by Purchaser has been duly and validly authorized by Purchaser and its Board of Directors.

8. Bulk Sales and Sales Taxes

8.1 The Sellers and the Guarantor covenant and agree to jointly and severally indemnify Purchaser and to save and hold Purchaser harmless from, for and against any and all liabilities, damages, losses or deficiencies (including actual attorneys' fees) which Purchaser or Purchaser's Affilate(s) incur as a result of any claims made by creditors of any Seller and/or Sellers' Affiliate(s) against Purchaser or any of Purchaser's Affiliate(s), including but not limited to claims made on account of a bulk transfer or any alleged bulk transfer.

8.2 In the event any tax is assessed against any Seller relative to the transfer of the Assets from the Seller to Purchaser as a result of or relating to this Agreement or any of the transactions contemplated hereunder, or for any other tax liability(ies) of the Seller, then all Sellers shall be liable for, and pay, any and all such tax liability(ies).

9. Activities After Closing

9.1 All Sellers and the Guarantor covenant and agree that, in the event the Assets are acquired by Purchaser as contemplated herein, then:

9.1.1 During the Consulting Period (as defined in Section 9.2, below) and for a period of ten (10) years thereafter, no Seller nor the Guarantor, nor any of their respective Affiliates, shall directly or indirectly solicit Purchaser's personnel, directly or indirectly solicit and/or service Purchaser's account(s) or customer(s), or their successors and assigns, or enter into any contract with Purchaser's account(s) or customer(s), or their successors and assigns.

9.1.2 Until Closing, no Seller nor the Guarantor, nor any of their respective Affiliates, will directly or indirectly solicit any proposal to acquire Purchaser's account(s) or customer(s), or negotiate or enter into discussions with any person, either directly or through others, concerning the sale or transfer of Purchaser's account(s) or customer(s), or their successors and assigns.

6

9.1.3 The Sellers and the Guarantor, jointly and severally acknowledge and agree that the remedy at law for any breach, or threatened breach, of any of the provisions of this Section 9.1 will be inadequate and, accordingly, the Sellers and the Guarantor, jointly and severally, covenant and agree that Purchaser shall, in addition to any other rights or remedies which Purchaser may have, be entitled to such equitable and injunctive relief as may be available from any court of competent jurisdiction to restrain the Sellers and the Guarantor, or any of them, from any violation of such provisions. Such right to obtain injunctive relief may be exercised, at the option of Purchaser, concurrently with, prior to, after, or in lieu of, the exercise of any other rights or remedies which Purchaser may have as a result of any such breach or threatened breach.

9.2 Consulting Agreement. At Closing, Purchaser shall enter into a certain Consulting Agreement with Dino Rotondo in the form attached hereto as Exhibit 9.2.

10. Nature of Statements & Survival of Representations, Warranties & Agreements of the Seller; Delivery of Schedules

10.1 All statements of fact contained in any written statement (including financial statements), certificate, schedule or other document delivered by or on behalf of the Sellers or pursuant hereto or in connection with the consummation of the transactions contemplated hereby shall be deemed representations and warranties made by all Sellers and the Guarantor hereunder. All covenants, representations, warranties and agreements made by the Sellers and the Guarantor hereunder or pursuant hereto or in connection with the transactions contemplated hereby shall survive the Closing, the delivery of any instrument of conveyance or Transfer Document, and the dissolution and liquidation of any Seller and remain effective regardless of any investigation at any time (whether before or after the date of this Agreement) made by or on behalf of Purchaser or of any information Purchaser may obtain or have (whether before or after the date of this Agreement) in respect thereof and regardless of any non-exercise by Purchaser of any rights hereunder.

10.2 Notwithstanding anything in this Agreement to the contrary, Sellers and Guarantor shall deliver Schedules 5.7 and 5.9 to Purchaser within ten (10) days following the Effective Date of this Agreement, in the manner of delivery provided under Section 12, upon such delivery and identification, shall be deemed appended to and incorporated into this Agreement and subject to the terms and conditions of Section 10.1, above.

11. Remedies; Default; Termination

Nothing contained herein is intended to or shall be construed so as to limit the remedies which any party hereto may have against any other party hereto in the event of a breach by any party of any representation, warranty, covenant or agreement made under or pursuant to this Agreement; it being intended that any remedies shall be cumulative and not exclusive. The parties further agree that a default by any Seller or the Guarantor under this Agreement shall constitute a default by all Sellers and the Guarantors under this Agreement. This Agreement may be terminated by the Purchaser at any time prior to Closing if there has been a breach of any of the representations or

7



Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

warranties set forth in this Agreement on the part of any Seller or the Guarantor. Purchaser shall have the additional right to terminate this Agreement within five (5) days following Purchaser's receipt of Schedules 5.7 and 5.9 as required under Section 10.2, above, or immediately in the event that Sellers and Guarantors fail or refuse to timely deliver Schedules 5.7 and 5.9 as required under Section 10.2, above. Any such termination shall be effective upon written notice to the Sellers and Guarantor.

12. Notices

Any notice, request or other communication, to be given by any party hereunder shall be in writing and shall be sufficiently given if sent by registered or certified mail, postage prepaid, or overnight express, addressed to such party as follows:

If to Purchaser:

AES - Apex Employer Services, Inc.
Attn: David Otto
13486 Canal Road
Sterling Heights, MI 48313

With a simultaneous copy to:
Dixon & MacDonald, P.C.
Attn: Scott D. MacDonald
24901 Northwestern Hwy., Ste. 200
Southfield, MI 48075

If to Seller and/or Guarantors:

PEOPLE PLUS
Attn: Dino Rotondo
2701 Troy Center Drive, Ste. 400
Troy, MI 48084

With a simultaneous copy to:
Jackier Gould, P.C.
Attn: Scott I. Mirkes, Esq.
121 W. Long Lake Rd., Ste. 200
Bloomfield Hills, MI 48304

or to such other addresses as the parties shall from time to time designate in writing.

13. No Third Party Rights

The provisions of this Agreement shall not entitle any party not a signatory to this Agreement to any rights as a third party beneficiary, or otherwise, it being the specific intention of the parties hereto to preclude any and all non-signatory parties from any such third party beneficiary right, or any other rights whatsoever.

8

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

14.    General

This Agreement sets forth the entire Agreement and understanding of the parties in respect of the transaction contemplated hereby and supersedes all prior agreements, arrangements and understandings relating to the subject matter hereof. No representation, promise, inducement or statement of intention has been made by the Seller or Purchaser which is not embodied in this Agreement or the written statements, certificates, schedules or other documents delivered pursuant hereto or in connection herewith. All of the terms, covenants, representations, warranties and conditions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by, the parties hereto and their respective successors and assigns, and, in with respect to Sellers and Guarantor, each of their Affiliates. This Agreement and the rights and obligations hereunder shall not be assignable by the Seller. Purchaser's rights in this Agreement may be assigned to any affiliate entity owned and/or controlled by Purchaser or Purchaser's principal(s). This Agreement may be amended, modified or cancelled, and any of the provisions hereof may be waived, only by a written instrument executed by the Seller and Purchaser or, in the case of a waiver, by the party waiving compliance. The failure of any party at any time or times to require performance of any provision hereof shall in no manner affect the right at a later time to enforce the same. No waiver by any party of any provision, or of any breach of any provision of this Agreement, whether by conduct or otherwise, in any one or more instances shall be deemed to be or construed as a further or continuing waiver of such provision or breach or of any other provision or breach. The invalidity of all or any part of any provision of this Agreement shall not render invalid the remainder of such provision. This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Michigan law governs this Agreement. The following courts shall have personal jurisdiction over the parties and all disputes relating or arising out of this Agreement: (a) all courts included within the state court system of the State of Michigan; and (b) all courts of the United States of America sitting within the State of Michigan including, but not limited to, all of the United States District Courts sitting within the State of Michigan. To the extent that it may effectively do so, each party hereby waives the defense of an inconvenient forum.

[Signatures on following pages]

9

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly signed, all as of the date first above written.

PURCHASER:

AES - APEX EMPLOYER SERVICES, INC.
A Michigan Corporation

Dated: 3-28-13

By: David Otto
Its: President

SELLERS:

AS HOLDINGS GROUP, LLC
A Michigan Limited Liability Company

Dated: 3-28-13

By: Dino Rotondo
Its: Authorized Member

APEX HR SERVICES, LLC
A Michigan Limited Liability Company

Dated: 3-28-13

By: Dino Rotondo
Its: Authorized Member

AS SOUTH, LLC
A Michigan Limited Liability Company

Dated 3-28-13

By: Dino Rotondo
Its: Authorized Member

[Signatures continued on following page]

10

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

PINNACLE HR SERVICES, LLC
A Michigan Limited Liability Company

Dated: 3-28-13

By: Dino Rotondo
Its: Authorized Member

APEX ADMINISTRATIVE SERVICES, LLC
A Michigan Limited Liability Company

Dated: 3-28-13

By: Dino Rotondo
Its: Authorized Member

GUARANTOR:

Dated: 3-28

DINO ROTONDO
Individually

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

SCHEDULE 1.1(A)

SELLERS' CUSTOMER LIST

(In accordance with Section 1.1(A))

| Purchaser: | Seller: | Customers: | States: | Employee Count: |
|---|---|---|---|---|
| APEX EMPLOYER SERVICES | PINNACLE HR SERVICES LLC | MICHAEL MINTZ | AZ | 1 |
| APEX EMPLOYER SERVICES | APEX HR SERVICES | MATP LLC | CT | 3 |
| APEX EMPLOYER SERVICES | AS SOUTH LLC | BEHAVIORAL HEALTH OF THE PALM BEACHES | FL | 549 |
| APEX EMPLOYER SERVICES | PINNACLE HR SERVICES LLC | LRM LLC | IL | 2 |
| APEX EMPLOYER SERVICES | PINNACLE HR SERVICES LLC | ATLAS TUBE | MI | 59 |
| APEX EMPLOYER SERVICES | PINNACLE HR SERVICES LLC | D. COURTADE | MI | 5 |
| APEX EMPLOYER SERVICES | PINNACLE HR SERVICES LLC | SELMAN TRANSPORTATION | MI | 7 |
| APEX EMPLOYER SERVICES | PINNACLE HR SERVICES LLC | TWO MEN & A TRUCK - WIXOM | MI | 61 |
| APEX EMPLOYER SERVICES | APEX HR SERVICES | CONSTRUCTION MAINTENANCE PLUS INC | NJ | 81 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | COSSI RESTAURANT CORP | NY | 81 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | COSSI RESTAURANT CORP - ALBANY | NY | 19 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | JONATHAN E. COHEN | NY | 1 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | MANHATTAN BISTRO & BAGEL | NY | 13 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | MARCANTONIO DEVEL. CORP AUTOBR | NY | 2 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | MICHAEL MANSION ESQ | NY | 1 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | ORCHARD PARK FIRE DISTRICT EMS INC | NY | 55 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | PARK INN | NY | 1 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | S&S CARPENTRY INC | NY | 3 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | SIGNARAMA @ INFAMOUS GRAPHICS | NY | 10 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | SOHO PIZZA | NY | 11 |
| APEX EMPLOYER SERVICES | AS HOLDINGS GROUP LLC | WELCOME HOME BUILDERS CORPORATION | NY | 5 |
| APEX EMPLOYER SERVICES | PINNACLE HR SERVICES LLC | APPLIED THERMAL ENGINEERING I | OH | 2 |
| APEX EMPLOYER SERVICES | PINNACLE HR SERVICES LLC | JOMIL INC | OH | 2 |
| APEX EMPLOYER SERVICES | APEX HR SERVICES | JACK FIELD D.O. P.A. | TX | 1 |
| APEX EMPLOYER SERVICES | TOTALS: | | | 975 |

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

SCHEDULE 1.1(B)

SELLERS' OTHER ASSETS

(In accordance with Section 1.1(B))

Miscellaneous furniture, trade fixtures and equipment located at 2701 Troy Center Drive, Ste. 400, Troy, MI 48084.

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

SCHEDULE 5.7

DISCLOSURE OF ACTUAL OR THREATENED LEGAL ACTION AND
OUTSTANDING ADJUDICATIONS OR ORDERS

(In accordance with Sections 5.7 and 10.2)

OCT-10-2013 08:09 IRS CHIEF COUNSEL

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

## SCHEDULE 5.9

### DISCLOSURE OF FEDERAL, STATE, MUNICIPAL AND OTHER UNPAID TAX LIENS, LIABILITIES AND PENALTIES

(In accordance with Sections 5.9 and 10.2)

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

EXHIBIT 9.2

CONSULTING AGREEMENT

(To be executed at Closing in accordance with Section 9.2)

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT ("Agreement"), dated as of the 28 day of MARCH, 2013 ("Effective Date"), is executed by and among AES - APEX EMPLOYER SERVICES, INC., a Michigan corporation ("Purchaser"), with offices at 13486 Canal Road, Sterling Heights, Michigan 48313; and DINO ROTONDO ("Consultant"), whose address is 2701 Troy Center Drive, Ste. 400, Troy, MI 48084; hereinafter, the "parties", based upon the following facts and circumstances, all of which are true and incorporated into this Agreement:

WHEREAS, Purchaser has on even date herewith purchased certain customer accounts (the "Customer List") from APEX ADMINISTRATIVE SERVICES, LLC, a Michigan limited liability company, AS HOLDINGS GROUP, LLC, a Michigan limited liability company, PINNACLE HR SERVICES, LLC, a Michigan limited liability company, AS SOUTH, LLC, a Michigan limited liability company, and APEX HR SERVICES, LLC, a Michigan limited liability company, all of which conduct business under the registered assumed name of "PEOPLE PLUS" (individually, a "Seller", and collectively, the "Sellers"), all of whom have offices at 2701 Troy Center Drive, Ste. 400, Troy, MI 48084 on the terms and conditions set forth in a certain Agreement for Purchase of Assets dated March 28, 2013 (the "Purchase Agreement");

WHEREAS, on even date therewith, Purchaser and its affiliates (collectively, the "AES Group") also entered into one or more agreements to purchase certain customer accounts from each Seller identified under the Purchase Agreement (collectively, the "Related Purchase Agreements"); and

WHEREAS, the Sellers under the Purchase Agreement and the sellers under the Related Purchase Agreements are sometimes collectively referred to herein as the "People Plus Group".

NOW, THEREFORE, the parties hereto agree as follows:

During the Consulting Period described below, and in consideration of Purchaser's remittance of the Consulting Fee described below, Consultant shall provide Purchaser with consulting services as the parties may mutually agree. Notwithstanding anything herein to the contrary, the parties agree and acknowledge that Consultant shall not be deemed a sales representative on behalf of Purchaser, and the consulting services to be provided hereunder shall specifically exclude the solicitation of orders and sale of goods or services.

In consideration of Consultant's services, Purchaser shall pay Consultant a fee, for a period of time commencing on the Effective Date until terminated as provided hereinbelow (the "Consulting Period"), equal to seventeen and one-half percent (17.5%) of gross profits received by Purchaser from a Customer acquired from Seller, if the Customer is represented by a PEO broker, or twenty percent (20%) of gross profits received by Purchaser from a Customer acquired from Sellers, if the Customer is not represented by a PEO broker (the "Consulting Fee"). The Consulting Fee shall be paid monthly in arrears during the Consulting Period. If the Consulting Period commences and/or terminates on a day other than the first day of a calendar month, then the Consulting Fees for such months of commencement and termination will be prorated. Gross profits shall mean revenue received by Purchaser on a Customer's account, less (a) direct expenses attributable to the employees leased under the Customer's account and (b) taxes paid on such revenue, including but not limited to the Michigan Business Tax,

Notwithstanding anything herein to the contrary, no further Consulting Fee shall be due on any Customer's account that is cancelled or terminated for any reason during the Consulting Period, unless the account is reinstated, in which event the Consulting Fee shall re-commence effective on the date of reinstatement, but shall only be due for the balance of the Consulting Period. Further, Sellers shall agree to cooperate with Purchaser in good faith to maintain all Customer accounts and goodwill of Purchaser's customers during the Consulting Period. Notwithstanding anything herein to the contrary, this Consulting Agreement shall terminate, and be of no further force and effect, upon the death or permanent disability of the Consultant, or upon its dissolution if the Consultant is an entity, or upon Consultant's material breach of the Purchase Agreement or this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly signed, all as of the date first above written.

PURCHASER:

AES - APEX EMPLOYER SERVICES, INC.
A Michigan Corporation

By: David Otto                                    Dated: 3-28-2013
Its: President

CONSULTANT:

DINO ROTONDO                                      Dated: 3-28-2013
Individually

2

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

EXHIBIT B

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

AGREEMENT FOR PURCHASE OF ASSETS

BETWEEN

APEX ADMINISTRATIVE SERVICES, LLC; AS HOLDINGS GROUP, LLC; PINNACLE HR SERVICES, LLC; AS SOUTH, LLC; and APEX HR SERVICES, LLC, all of which conduct business under the registered assumed name of "PEOPLE PLUS" ("SELLERS")

AND

AES - APEX EMPLOYER SOLUTIONS, INC. ("PURCHASER")

THIS AGREEMENT FOR PURCHASE OF ASSETS ("Agreement"), dated as of this 28th day of March, 2013 ("Effective Date"), is executed by and among AES - APEX EMPLOYER SOLUTIONS. INC., a Michigan corporation ("Purchaser"), with offices at 13486 Canal Road, Sterling Heights, Michigan 48313; APEX ADMINISTRATIVE SERVICES, LLC, a Michigan limited liability company, AS HOLDINGS GROUP, LLC, a Michigan limited liability company, PINNACLE HR SERVICES, LLC, a Michigan limited liability company, AS SOUTH, LLC, a Michigan limited liability company, and APEX HR SERVICES, LLC, a Michigan limited liability company, all of which conduct business under the registered assumed name of "PEOPLE PLUS" (individually, a "Seller", and collectively, the "Sellers"), all of whom have offices at 2701 Troy Center Drive, Ste. 400, Troy, MI 48084; the persons and entities signing below to guarantee certain obligations of Seller (individually, a "Guarantor", and collectively, "Guarantors"), whose address is 2701 Troy Center Drive, Ste. 400, Troy, MI 48084; hereinafter, the "parties", based upon the following facts and circumstances, all of which are true and incorporated into this Agreement:

WHEREAS, Purchaser desires to purchase, and Sellers desire to sell, certain of Seller's assets on the terms and conditions hereinafter set forth; and

WHEREAS, on even date herewith, Purchaser's affiliates have entered into certain agreements to purchase additional customer accounts from one or more Sellers (collectively, the "Related Purchase Agreements").

NOW, THEREFORE, the parties hereto agree as follows:

1.    Sale of Assets

        1.1     In reliance upon the warranties, representations and covenants contained in this Agreement and on the terms and subject to the conditions of this Agreement, each Seller hereby agrees that it will, in the manner specified in Section 1.3 of this Agreement, sell, convey, transfer, assign and deliver to Purchaser, and Purchaser hereby agrees that it will purchase all of the customers identified on Schedule 1.1(A) (hereinafter referred to as the "Customer List"), including but not limited to certain equipment, goodwill, an assignment of all rights, title and interest in all noncompetition and nonsolicitation agreements in favor of such Seller and each Guarantor, all of such Seller's intangible data, information, documentation and materials associated with the Customers and Customer List, and the tangible assets identified on Schedule 1.1(B). The Customer

DSR
3-28-13

List identified on Schedule 1.1(A) and the assets identified on Schedule 1.1(B) are sometimes collectively referred to herein as the "Assets".

1.3 Sellers' transfer and sale of the Assets hereunder shall be effected by the delivery, by Sellers to Purchaser, of such bills of sale with covenants of warranty, endorsements, assignments and other good and sufficient instruments of sale, transfer, assignment and conveyance and all consents of third parties necessary thereto (all in form and substance satisfactory to Purchaser's counsel and with all required federal and state documentary and transfer stamps affixed) as shall be required, or as may be desirable in order to effectively vest in Purchaser, good, indefeasible, marketable and merchantable title to the Assets, free and clear of all security interests, liens, claims or encumbrance of any nature or kind whatsoever (herein the "Transfer Documents"). Each Seller covenants that it will, upon the request of Purchaser execute, acknowledge and deliver, all such additional documents as may be reasonably required by Purchaser, in order more effectively to sell, convey, transfer, assign and deliver to Purchaser any of the Assets or to carry out the intention and purpose of this Agreement and the transactions contemplated hereby and to evidence the ownership by Purchaser of the Assets.

2. Agreement to Purchase and Purchase Price

In consideration of the Sale of the Assets as herein provided, Purchaser hereby agrees that it will purchase the Assets, and will in the manner provided in Section 4, pay to Sellers an aggregate of Two Thousand and No/100 Dollars ($2,000.00) (the "Purchase Price"). The allocation of purchase price shall be determined by Purchaser.

3. Non-Assumption of Liabilities

Purchaser shall not, does not and will not assume or agree to pay, perform or discharge any liability or obligation of any Seller, including without limiting the generality of the foregoing, any liability or obligation arising out of, incurred in connection with, related to or created as a result of (i) this Agreement or the sale of the Assets pursuant hereto or (ii) any liability, obligation, occurrence, transaction or agreement of any nature, whether or not such liability, obligation, occurrence, transaction or agreement now exists or arises, is incurred or is created after the date hereof.

4. Payment of Purchase Price; Closing

The Purchase Price shall be paid to the Sellers at Closing, which shall occur within ten (10) days following satisfaction or Purchaser's written waiver of every contingency set forth in this Agreement, including but not limited to discharge of all federal, state, municipal and other tax liens that encumber or pose a threat of encumbering title to the Assets, as determined in the sole discretion of Purchaser.

2

DSZ
3-28-13

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

5.    Representations, Warranties & Agreements of each Seller and Guarantor:

The Sellers and Guarantor, jointly and severally, represent, warrant and agree as follows:

5.1    Each Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Michigan. Each Seller has full power and lawful authority to own the Assets to be sold hereunder and to engage in the business in which it is engaged.

5.2    Dino Rotondo is authorized to sign this Agreement on behalf of each Seller, and this Agreement constitutes a valid obligation legally binding on each Seller in accordance with its terms and the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby (i) are permissible under the Articles of Organization and Operating Agreement of each Seller, (ii) have been duly and validly authorized by all necessary and appropriate corporate action, (iii) does not and will not result in a breach of or a default under any agreement, license or other obligation of each Seller relating to the operation or ownership of such Seller or any of the Assets to be acquired hereunder, or, (iv) will not violate any law, rule or regulation of any agency or governmental body.

5.3    Each Seller is entitled to full and exclusive possession of the Customer List. Attached hereto as Schedule 1.1(A) are true and correct copies of each customer account constituting the Customer List, and attached hereto as Schedule 1.1(B) is a true and correct inventory of all other Assets.

5.4    Each Seller to the best of its knowledge and belief is not in default, or alleged to be in default, under any agreement, license or obligation relating to the operation of its business; and no other party to any such agreement, license, obligation is in default thereunder; and there exists no condition or event which, after notice or lapse of time or both, would constitute a default by any party to any such agreement, license or obligations.

5.5    Each Seller and its employees have all governmental licenses and permits (federal, state and local) necessary for the conduct of the business as now carried on by the Sellers and such licenses are in full force and effect. To the best of such Seller's knowledge and belief no violations are or have been recorded in respect of any such licenses or permits and no proceeding is pending or threatened concerning the revocation or limitation of any such license or permit.

5.6    Each Seller to the best of its knowledge and belief has complied with all laws, rules, regulations and orders applicable to the operation of the business conducted by such Seller and the Seller has not taken any action, individually or in concert, or failed to take any action which action or failure will or would, in any way, preclude or prevent Purchaser from utilizing the Assets after the Closing in the same manner as theretofore operated by the Seller.

DR
3-28-13

3

5.7     Except as set forth in Schedule 5.7, which shall be delivered to Purchaser in the manner set forth in Section 10.2, below, each Seller to the best of its knowledge and belief is not engaged in or threatened with any legal proceeding and there are no proceedings, claims or investigations of any kind pending or threatened against such Seller relating to or affecting any of the Assets and the Seller knows of no basis or grounds therefor. Except as set forth on Schedule 5.7, to the best of the Seller's knowledge and belief there are no outstanding adjudications or orders of any agency or tribunal against the Seller relating to its prospects or affecting any of the Assets.

5.8     Each Seller may sell the Assets to Purchaser without the consent or approval of any person, corporation, partnership, governmental authority or other entity, or shall obtain all requisite consents prior to Closing.

5.9     All Assets will be transferred to Purchaser free and clear of all liens or claims. As of the date of Closing, all federal, state, municipal and other taxes that encumber or pose a threat of encumbering title to those Assets will have been satisfied or discharged to Purchaser's satisfaction, including but not limited to any and all unemployment tax liability(ies) and all deficit balance(s) in Seller's account with any state, including but not limited to the Seller's account with the Michigan Unemployment Insurance Agency (MUIA). Schedule 5.9, which shall be delivered to Purchaser in the manner set forth in Section 10.2, below, shall be a true and complete list of Seller's federal, state, municipal and other tax liens, liabilities and penalties as of the date hereof. Any such liens, liabilities and penalties that remain unpaid as of the date of Closing shall be paid from the Purchase Price or, at Purchaser's sole option, as provided under Section 6.1, below.

5.10     Commencing with the date of this Agreement and continuing through the date of Closing, there will be no bank debt, borrowings, leases, loans, encumbrances, liens, attachments, contractual obligations, or amounts due third parties, or arising in the ordinary course of business as relates to the Assets, or directly related to this proposed transaction.

5.11     No representation or warranty by any Seller contained in this Agreement or made hereunder contains, or will contain, any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.

5.12     Each Seller further warrants and represents that it will continue to operate in the ordinary course of business and maintain all Assets until they are transferred to Purchaser. The Assets will be maintained on a normal basis through the date of Closing, and there will be no changes in methods or procedures for billing, collecting, or recording customer accounts receivable or reserves for doubtful accounts, except upon Purchaser's prior written consent.

5.13     Each Seller has made the foregoing representations and warranties with the knowledge and expectation that Purchaser is placing complete reliance on them.

DSR
3-28-13

4

6. Indemnification.

6.1 Each Seller and Guarantor covenant and agree that, regardless of any investigation at any time made by or on behalf of Purchaser or of any information Purchaser may have in respect thereof, the Sellers and Guarantors will jointly and severally indemnify and hold harmless Purchaser from, for and against any loss, damage, liability or deficiency (including without limitation, reasonable attorneys' fees and other costs and expenses incident to any suit, action, investigation or other proceeding) arising out of or resulting from, and will pay Purchaser on demand the full amount of any sum which Purchaser may pay or become obligated to pay on account of, (i) any false representation or the breach of any warranty made by any Seller and/or any of Sellers' Affiliate(s) under this Agreement, and Related Agreement, or any closing documents; (ii) any federal, state, local or other tax of any nature existing prior to the date of Closing and owed by any Seller and/or any of Sellers' Affiliate(s); (iii) any failure of any Seller and/or Sellers' Affiliates to perform or observe any term, provision, covenant, agreement or condition under the Letter of Intent, this Agreement, any Related Agreement, or any closing documents to be performed or observed by any Seller and/or Sellers' Affiliate(s); (iv) any claim, litigation or other action of any nature arising out of any act performed, transaction entered into or state of facts suffered to exist by any Seller and/or Sellers' Affiliate(s) prior to the date of Closing; and (v) without limiting the generality of the foregoing, any claim of any employee of any Seller and/or Sellers' Affiliate(s), or of any other person, arising out of or relating to any employee stock option, bonus retirement, profit sharing, pension or other similar plan of any Seller and/or Sellers' Affiliate(s) or the operation or termination of any such plan. In addition, all Sellers and Guarantor will jointly and severally indemnify and hold harmless Purchaser from, for and against any costs and expenses (including actual attorneys' fees) which Purchaser incurs to enforce the indemnification obligations of the Sellers and Guarantor hereunder. Purchaser shall have a right to offset such losses, damages, liabilities, deficiencies, costs, expenses and attorneys' fees against any sums owed by Purchaser or Purchaser's Affiliates to the Seller and/or any Guarantor. For the purposes of this Agreement, an "Affiliate" of a party shall mean any person or entity controlled by or under common control with such party or the party's principal.

6.2 Purchaser covenants and agrees that Purchaser will indemnify and hold harmless the Seller from, for, and against any loss, damage, liability or deficiency (including without limitation, reasonable attorneys' fees and other costs and expenses incidental to any suit, action, investigation or other proceeding) arising out of or resulting from, and will pay the Sellers on demand the full amount of any sum which the Sellers may pay or become obligated to pay on account of (i) any inaccuracy in any representation or the breach of any warranty made by Purchaser hereunder; (ii) any failure of Purchaser to perform or observe any term, provision, covenant, agreement or condition hereunder on the part of Purchaser to be performed or observed; and (iii) Purchaser shall be responsible for, and shall indemnify and hold Seller harmless from and against any claim, litigation or other action of any nature arising out of any customer services performed by Purchaser, its agents or representatives after the date of Closing, or any change in the Customer contracts assumed hereunder which are implemented by Purchaser.

5

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

7.      Representations and Warranties by Purchaser

Purchaser represents, warrants and agrees as follows:

7.1      Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of Michigan with full power and authority to purchase and acquire the Assets as herein provided.

7.2      The execution, delivery and performance of this Agreement by Purchaser has been duly and validly authorized by Purchaser and its Board of Directors.

8.      Bulk Sales and Sales Taxes

8.1      The Sellers and the Guarantor covenant and agree to jointly and severally indemnify Purchaser and to save and hold Purchaser harmless from, for and against any and all liabilities, damages, losses or deficiencies (including actual attorneys' fees) which Purchaser or Purchaser's Affiliate(s) incur as a result of any claims made by creditors of any Seller and/or Sellers' Affiliate(s) against Purchaser or any of Purchaser's Affiliate(s), including but not limited to claims made on account of a bulk transfer or any alleged bulk transfer.

8.2      In the event any tax is assessed against any Seller relative to the transfer of the Assets from the Seller to Purchaser as a result of or relating to this Agreement or any of the transactions contemplated hereunder, or for any other tax liability(ies) of the Seller, then all Sellers shall be liable for, and pay, any and all such tax liability(ies).

9.      Activities After Closing

9.1      All Sellers and the Guarantor covenant and agree that, in the event the Assets are acquired by Purchaser as contemplated herein, then:

9.1.1      During the Consulting Period (as defined in Section 9.2, below) and for a period of ten (10) years thereafter, no Seller nor the Guarantor, nor any of their respective Affiliates, shall directly or indirectly solicit Purchaser's personnel, directly or indirectly solicit and/or service Purchaser's account(s) or customer(s), or their successors and assigns, or enter into any contract with Purchaser's account(s) or customer(s), or their successors and assigns.

9.1.2      Until Closing, no Seller nor the Guarantor, nor any of their respective Affiliates, will directly or indirectly solicit any proposal to acquire Purchaser's account(s) or customer(s), or negotiate or enter into discussions with any person, either directly or through others, concerning the sale or transfer of Purchaser's account(s) or customer(s), or their successors and assigns.

DSR

3-28-12

6

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

9.1.3   The Sellers and the Guarantor, jointly and severally acknowledge and agree that the remedy at law for any breach, or threatened breach, of any of the provisions of this Section 9.1 will be inadequate and, accordingly, the Sellers and the Guarantor, jointly and severally, covenant and agree that, Purchaser shall, in addition to any other rights or remedies which Purchaser may have, be entitled to such equitable and injunctive relief as may be available from any court of competent jurisdiction to restrain the Sellers and the Guarantor, or any of them, from any violation of such provisions.  Such right to obtain injunctive relief may be exercised, at the option of Purchaser concurrently with, prior to, after, or in lieu of, the exercise of any other rights or remedies which Purchaser may have as a result of any such breach or threatened breach.

9.2    Consulting Agreement. At Closing, Purchaser shall enter into a certain Consulting Agreement with Dino Rotondo in the form attached hereto as Exhibit 9.2.

10.    Nature of Statements & Survival of Representations, Warranties & Agreements of the Seller; Delivery of Schedules

10.1    All statements of fact contained in any written statement (including financial statements), certificate, schedule or other document delivered by or on behalf of the Sellers or pursuant hereto or in connection with the consummation of the transactions contemplated hereby shall be deemed representations and warranties made by all Sellers and the Guarantor hereunder.  All covenants, representations, warranties and agreements made by the Sellers and the Guarantor hereunder or pursuant hereto or in connection with the transactions contemplated hereby shall survive the Closing, the delivery of any instrument of conveyance or Transfer Document, and the dissolution and liquidation of any Seller and remain effective regardless of any investigation at any time (whether before or after the date of this Agreement) made by or on behalf of Purchaser or of any information Purchaser may obtain or have (whether before or after the date of this Agreement) in respect thereof and regardless of any non-exercise by Purchaser of any rights hereunder.

10.2    Notwithstanding anything in this Agreement to the contrary, Sellers and Guarantor shall deliver Schedules 5.7 and 5.9 to Purchaser within ten (10) days following the Effective Date of this Agreement, in the manner of delivery provided under Section 12, upon such delivery and identification, shall be deemed appended to and incorporated into this Agreement and subject to the terms and conditions of Section 10.1, above.

11.    Remedies; Default; Termination

Nothing contained herein is intended to or shall be construed so as to limit the remedies which any party hereto may have against any other party hereto in the event of a breach by any party of any representation, warranty, covenant or agreement made under or pursuant to this Agreement, it being intended that any remedies shall be cumulative and not exclusive. The parties further agree that a default by any Seller or the Guarantor under this Agreement shall constitute a default by all Sellers and the Guarantors under this Agreement. This Agreement may be terminated by the Purchaser at any time prior to Closing if there has been a breach of any of the representations or

7

DSR
3-28-13

warranties set forth in this Agreement on the part of any Seller or the Guarantor. Purchaser shall have the additional right to terminate this Agreement within five (5) days following Purchaser's receipt of Schedules 5.7 and 5.9 as required under Section 10.2, above, or immediately in the event that Sellers and Guarantors fail or refuse to timely deliver Schedules 5.7 and 5.9 as required under Section 10.2, above. Any such termination shall be effective upon written notice to the Sellers and Guarantor.

12.   Notices

Any notice, request or other communication, to be given by any party hereunder shall be in writing and shall be sufficiently given if sent by registered or certified mail, postage prepaid, or overnight express, addressed to such party as follows:

If to Purchaser:

> AES - Apex Employer Solutions, Inc.
> Attn: David Otto
> 13486 Canal Road
> Sterling Heights, MI 48313
>
> With a simultaneous copy to:
> Dixon & MacDonald, P.C.
> Attn: Scott D. MacDonald
> 24901 Northwestern Hwy., Ste. 200
> Southfield, MI 48075

If to Seller and/or Guarantors:

> PEOPLE PLUS
> Attn: Dino Rotondo
> 2701 Troy Center Drive, Ste. 400
> Troy, MI 48084
>
> With a simultaneous copy to:
> Jackier Gould, P.C.
> Attn: Scott I. Mirkes, Esq.
> 121 W. Long Lake Rd., Ste. 200
> Bloomfield Hills, MI 48304

or to such other addresses as the parties shall from time to time designate in writing.

13.   No Third Party Rights

The provisions of this Agreement shall not entitle any party not a signatory to this Agreement to any rights as a third party beneficiary, or otherwise, it being the specific intention of the parties hereto to preclude any and all non-signatory parties from any such third party beneficiary right, or any other rights whatsoever.

DSR
3-28-13

8

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

14.    General

This Agreement sets forth the entire Agreement and understanding of the parties in respect of the transaction contemplated hereby and supersedes all prior agreements, arrangements and understandings relating to the subject matter hereof.  No representation, promise, inducement or statement of intention has been made by the Seller or Purchaser which is not embodied in this Agreement or the written statements, certificates, schedules or other documents delivered pursuant hereto or in connection herewith.  All of the terms, covenants, representations, warranties and conditions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by, the parties hereto and their respective successors and assigns, and, in with respect to Sellers and Guarantor, each of their Affiliates.  This Agreement and the rights and obligations hereunder shall not be assignable by the Seller.  Purchaser's rights in this Agreement may be assigned to any affiliate entity owned and/or controlled by Purchaser or Purchaser's principal(s).  This Agreement may be amended, modified or cancelled, and any of the provisions hereof may be waived, only by a written instrument executed by the Seller and Purchaser or, in the case of a waiver, by the party waiving compliance.  The failure of any party at any time or times to require performance of any provision hereof shall in no manner affect the right at a later time to enforce the same.  No waiver by any party of any provision, or of any breach of any provision of this Agreement, whether by conduct or otherwise, in any one or more instances shall be deemed to be or construed as a further or continuing waiver of such provision or breach or of any other provision or breach.  The invalidity of all or any part of any provision of this Agreement shall not render invalid the remainder of such provision.  This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Michigan law governs this Agreement. The following courts shall have personal jurisdiction over the parties and all disputes relating to or arising out of this Agreement: (a) all courts included within the state court system of the State of Michigan; and (b) all courts of the United States of America sitting within the State of Michigan including, but not limited to, all of the United States District Courts sitting within the State of Michigan. To the extent that it may effectively do so, each party hereby waives the defense of an inconvenient forum.

[Signatures on following pages]

DSR
3-28-15

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly signed, all as of the date first above written.

PURCHASER:

AES - APEX EMPLOYER SOLUTIONS, INC.
A Michigan Corporation

Dated: 3-28-2013

By: David Otto
Its: President

SELLERS:

AS HOLDINGS GROUP, LLC
A Michigan Limited Liability Company

Dated: 3-28-2013

By: Dino Rotondo
Its: Authorized Member

APEX HR SERVICES, LLC
A Michigan Limited Liability Company

Dated: 3-28-2013

By: Dino Rotondo
Its: Authorized Member

AS SOUTH, LLC
A Michigan Limited Liability Company

Dated: 3-28-2013

By: Dino Rotondo
Its: Authorized Member

[Signatures continued on following page]

10

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

PINNACLE HR SERVICES, LLC
A Michigan Limited Liability Company

Dated: 3-28-2013

By: Dino Rotondo
Its: Authorized Member

APEX ADMINISTRATIVE SERVICES, LLC, LLC
A Michigan Limited Liability Company

Dated: 3-28-2013

By: Dino Rotondo
Its: Authorized Member

GUARANTOR:

Dated: 3-28-2013

DINO ROTONDO
Individually

11

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

## SCHEDULE 1.1(A)

### SELLERS' CUSTOMER LIST

(In accordance with Section 1.1(A))

Schedule 1.1(A), Page 1

| Purchaser: | Seller: | Customers: | States: | Employee Count: |
|---|---|---|---|---|
| APEX EMPLOYER SOLUTIONS | APEX HR SERVICES | MILL MANAGEMENT | CT | 3 |
| APEX EMPLOYER SOLUTIONS | PINNACLE HR SERVICES LLC | Z3 | DE | 2 |
| APEX EMPLOYER SOLUTIONS | AS SOUTH LLC | ACLU FOUNDATION OF FLORIDA | FL | 35 |
| APEX EMPLOYER SOLUTIONS | AS SOUTH LLC | ALLIED PCB LLC | FL | 4 |
| APEX EMPLOYER SOLUTIONS | AS SOUTH LLC | BENCHMARK TITLE & ESCROW LLC | FL | 1 |
| APEX EMPLOYER SOLUTIONS | AS SOUTH LLC | DUNHILL MANAGEMENT INC | FL | 5 |
| APEX EMPLOYER SOLUTIONS | AS SOUTH LLC | DYNAMIC MASONRY INC | FL | 5 |
| APEX EMPLOYER SOLUTIONS | AS SOUTH LLC | PALM BEACH HOUSE CONDOMINIUM ASSOC. | FL | 10 |
| APEX EMPLOYER SOLUTIONS | AS SOUTH LLC | PEO SOURCE | FL | 3 |
| APEX EMPLOYER SOLUTIONS | AS SOUTH LLC | RIELLY BROS | FL | 1 |
| APEX EMPLOYER SOLUTIONS | AS SOUTH LLC | SUNSHINE BATH | FL | 15 |
| APEX EMPLOYER SOLUTIONS | AS SOUTH LLC | TOTAL HEALTH DIABETES LLC | FL | 12 |
| APEX EMPLOYER SOLUTIONS | APEX HR SERVICES | APPLE HEALTH CARE | GA | 2 |
| APEX EMPLOYER SOLUTIONS | PINNACLE HR SERVICES LLC | DR. MARCUS RAINES | IN | 1 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | W.O. COMSTOCK & ASSOCIATES LL | KS | 1 |
| APEX EMPLOYER SOLUTIONS | PINNACLE HR SERVICES LLC | BLUEGRASS PORTABLE STORAGE LL | KY | 6 |
| APEX EMPLOYER SOLUTIONS | MOBILEPLAY PARTNERS LLC | MOBILEPLAY PARTNERS LLC | MI | 211 |
| APEX EMPLOYER SOLUTIONS | APEX HR SERVICES | GUHA EMERGENCY SERVICES | NC | 1 |
| APEX EMPLOYER SOLUTIONS | APEX HR SERVICES | D&M MAINTENANCE INC | NJ | 25 |
| APEX EMPLOYER SOLUTIONS | APEX HR SERVICES | J & M AIR | NJ | 18 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | ALVAREZ DENTAL PLLC | NY | 8 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | BEST WAY TO BUY LLC | NY | 1 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | BICOSSI CORP | NY | 22 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | BRADYS WOOD FLOORS LLC | NY | 4 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | BROWN & STROMECKI AGENCY INC | NY | 6 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | C.E. BUELLS'S CARPET SALES & SE | NY | 3 |

Case 2:13-cv-14519-RHC-DRG  ECF No. 1, PageID.47  Filed 10/29/13  Page 47 of 53

Schedule 1.1(A), Page 2

| Purchaser: | Seller: | Customers: | States: | Employee Count: |
|---|---|---|---|---|
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | CREATIVE KITCHENS OF GLENMONT | NY | 7 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | DAVID NIGRINY ELECTRICAL CONTR | NY | 2 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | DAVID PHAFF & ASSOCIATES INC | NY | 2 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | EMENEE | NY | 11 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | FIBER CLEAN ASSOCIATES INC | NY | 5 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | LOUDON LOCKSMITH SERVICES INC | NY | 2 |
| APEX EMPLOYER SOLUTIONS | APEX HR SERVICES LLC | RSI EQUIPMENT INC | NY | 20 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | SHADOW ROCK FARM | NY | 10 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | TMSM DRYWALL FINISHER | NY | 2 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | TOTE CONSTRUCTION SERVICES | NY | 3 |
| APEX EMPLOYER SOLUTIONS | APEX HR SERVICES LLC | VALLEY FAB AND EQUIPMENT INC | NY | 10 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | VISTA FOOD EXCHANGE INC | NY | 69 |
| APEX EMPLOYER SOLUTIONS | AS HOLDINGS GROUP LLC | TRAVEL TRIPPER LLC | NY NJ CA | 16 |
| APEX EMPLOYER SOLUTIONS | PINNACLE HR SERVICES LLC | GOODMAN & EDINGER INC | OH | 2 |
| APEX EMPLOYER SOLUTIONS | PINNACLE HR SERVICES LLC | KETTERING GLASS | OH | 4 |
| APEX EMPLOYER SOLUTIONS | APEX HR SERVICES | LARRY BERG ENP INC | TX | 1 |
| APEX EMPLOYER SOLUTIONS | PINNACLE HR SERVICES LLC | MELRON CORPORATION | WI | 17 |
| | | | | |
| APEX EMPLOYER SOLUTIONS | Totals: | | | 588 |

OCT-10-2013 08:14 IRS CHIEF COUNSEL

Case 2:13-cv-14519-RHC-DRG ECF No. 1, PageID.48 Filed 10/29/13 Page 48 of 53

## SCHEDULE 1.1(B)

### SELLERS' OTHER ASSETS

(In accordance with Section 1.1(B))

Miscellaneous furniture, trade fixtures and equipment located at 2701 Troy Center Drive, Ste. 400, Troy, MI 48084.

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

## SCHEDULE 5.7

### DISCLOSURE OF ACTUAL OR THREATENED LEGAL ACTION AND OUTSTANDING ADJUDICATIONS OR ORDERS

(In accordance with Sections 5.7 and 10.2)

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

EXHIBIT 9.2

CONSULTING AGREEMENT

(To be executed at Closing in accordance with Section 9.2)

Received for Filing Oakland County Clerk 2013 OCT 01 PM 02:09

THIS CONSULTING AGREEMENT ("Agreement"), dated as of the ___ day of _____ 2013 ("Effective Date"), is executed by and among AES - APEX EMPLOYER SOLUTIONS, INC., a Michigan corporation ("Purchaser"), with offices at 13486 Canal Road, Sterling Heights, Michigan 48313; and DINO ROTONDO ("Consultant"), whose address is 2701 Troy Center Drive, Ste. 400, Troy, MI 48084; hereinafter, the "parties", based upon the following facts and circumstances, all of which are true and incorporated into this Agreement:

WHEREAS, Purchaser has on even date herewith purchased certain customer accounts (the "Customer List") from APEX ADMINISTRATIVE SERVICES, LLC, a Michigan limited liability company, AS HOLDINGS GROUP, LLC, a Michigan limited liability company, PINNACLE HR SERVICES, LLC, a Michigan limited liability company, AS SOUTH, LLC, a Michigan limited liability company, and APEX HR SERVICES, LLC, a Michigan limited liability company, all of which conduct business under the registered assumed name of "PEOPLE PLUS" (individually, a "Seller", and collectively, the "Sellers"), all of whom have offices at 2701 Troy Center Drive, Ste. 400, Troy, MI 48084 on the terms and conditions set forth in a certain Agreement for Purchase of Assets dated March 28, 2013 (the "Purchase Agreement");

WHEREAS, on even date therewith, Purchaser and its affiliates (collectively, the "AES Group") also entered into one or more agreements to purchase certain customer accounts from each Seller identified under the Purchase Agreement (collectively, the "Related Purchase Agreements"); and

WHEREAS, the Sellers under the Purchase Agreement and the sellers under the Related Purchase Agreements are sometimes collectively referred to herein as the "People Plus Group".

NOW, THEREFORE, the parties hereto agree as follows:

During the Consulting Period described below, and in consideration of Purchaser's remittance of the Consulting Fee described below, Consultant shall provide Purchaser with consulting services as the parties may mutually agree. Notwithstanding anything herein to the contrary, the parties agree and acknowledge that Consultant shall not be deemed a sales representative on behalf of Purchaser, and the consulting services to be provided hereunder shall specifically exclude the solicitation of orders and sale of goods or services.

In consideration of Consultant's services, Purchaser shall pay Consultant a fee, for a period of time commencing on the Effective Date until terminated as provided hereinbelow (the "Consulting Period"), equal to seventeen and one-half percent (17.5%) of gross profits received by Purchaser from a Customer acquired from Seller, if the Customer is represented by a PEO broker, or twenty percent (20%) of gross profits received by Purchaser from a Customer acquired from Sellers, if the Customer is not represented by a PEO broker (the "Consulting Fee"). The Consulting Fee shall be paid monthly in arrears during the Consulting Period. If the Consulting Period commences and/or terminates on a day other than the first day of a calendar month, then the Consulting Fees for such months of commencement and termination will be prorated. Gross profits shall mean revenue received by Purchaser on a Customer's account, less (a) direct expenses attributable to the employees leased under the Customer's account and (b) taxes paid on such revenue, including but not limited to the Michigan Business Tax.

Notwithstanding anything herein to the contrary, no further Consulting Fee shall be due on any Customer's account that is cancelled or terminated for any reason during the Consulting Period, unless the account is reinstated, in which event the Consulting Fee shall re-commence effective on the date of reinstatement, but shall only be due for the balance of the Consulting Period. Further, Sellers shall agree to cooperate with Purchaser in good faith to maintain all Customer accounts and goodwill of Purchaser's customers during the Consulting Period. Notwithstanding anything herein to the contrary, this Consulting Agreement shall terminate, and be of no further force and effect, upon the death or permanent disability of the Consultant, or upon its dissolution if the Consultant is an entity, or upon Consultant's material breach of the Purchase Agreement or this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly signed, all as of the date first above written.

PURCHASER:

AES - APEX EMPLOYER SOLUTIONS, INC.
A Michigan Corporation

Dated: 3-28-2013

By: David Otto
Its: President

CONSULTANT:

Dated: 3-28-2013

DINO ROTONDO
Individually

2

TOTAL P.050