UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AES-APEX EMPLOYER SERVICES, INC. and
AES-APEX EMPLOYER SOLUTIONS, INC.,

    Plaintiffs,

v.                                            Case No. 13-14519

DINO ROTONDO, RICHARD MARK, and
UNITED STATES DEPARTMENT OF
TREASURY – INTERNAL REVENUE SERVICE,

    Defendants,

and

AKOURI INVESTMENTS, LLC,

    Intervenor.
                                          /

**ORDER AND OPINION (1) SUSTAINING IN PART AND OVERRULING IN PART OBJECTIONS TO THE REPORT AND RECOMMENDATION, (2) ADOPTING IN PART AND REJECTING IN PART THE REPORT AND RECOMMENDATION, (3) GRANTING THE IRS' MOTION FOR SUMMARY JUDGMENT, (4) DENYING AKOURI INVESTMENTS, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT, (4) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO INTERPLEAD FUNDS, FOR DISMISSAL, AND FOR COSTS AND ATTORNEY FEES, AND (5) DISMISSING AKOURI INVESTMENTS LLC's CROSS-CLAIM**

Plaintiffs AES-Apex Employer Services, Inc. and AES-Apex Employer Solutions, Inc. (collectively "Plaintiffs") filed a complaint in state court seeking to interplead funds and for declaratory judgment against Defendants Dino Rotondo, Richard Mark, and the IRS. The action was removed to this court. (Dkt. # 1). Akouri Investments, LLC ("Akouri") filed a motion to intervene, which the court granted (Dkt. # 32), and Akouri filed an intervenor complaint against Plaintiffs and Rotondo. (Dkt. # 33.) In sum, this action was brought to determine who is entitled to receive certain consulting fees that

Plaintiffs would, barring the issues raised herein, pay to Rotondo and whether Plaintiffs are entitled to attorneys' fees in relation to this interpleader action.

Pending motions were referred to the Magistrate Judge who issued a Report and Recommendation ("R&R") (Dkt. # 83). The court however, finding some of the objections to that R&R at least facially valid, vacated the R&R and returned the matter to the Magistrate Judge for reconsideration. (Dkt. # 101.) Before the court now is the revised R&R (Dkt. # 110) advising the court to grant Defendant IRS' motion for summary judgment (Dkt. # 44), deny Intervenor Akouri's motion for partial summary judgment (Dkt. # 45), grant in part and deny in part Plaintiffs' motion to interplead funds and for costs and attorneys' fees (Dkt. # 46), and dismiss Akouri's cross-claim (Dkt. # 33). Plaintiffs, the IRS, and Akouri have filed objections to the R&R (Dkt. ## 113, 114, 115) and those parties have responded and replied to each other's objections. Rotondo and Mark have not filed objections nor have they responded to any other parties' objections. After reviewing the R&R and the parties' briefs, the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below and in the revised R& R, the court will sustain a number of Plaintiffs' and the IRS' objections, adopt the revised R&R on all other matters, and overrule the remaining objections.

## I. STANDARD

### Timely Objections and *De Novo* Review

The filing of timely objections to an R. & R. requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de*

*novo* review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute," *Thomas v. Arn,* 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

## II. DISCUSSION

Three parties, Plaintiffs, Akouri, and the IRS, have filed objections to the revised R&R. The court will take each in turn.

### A. Plaintiffs' Objections 1, 2 and 3

Plaintiffs' first objection is tripartite, reasserting each of the three objections filed as to the original R&R. The court will refer to these as Objections 1.1, 1.2, and 1.3. Plaintiffs' Objections 2 and 3 are nearly identical to Objection 1.1 and 1.3, respectively, and thus they will be dealt with together. Additionally, the IRS' single objection to the revised R&R is identical to Plaintiffs' Objection 3, and also will be considered together with that objection.

### 1. Plaintiffs' Objections 1.1 and 2

The first subpart of Plaintiffs Objection 1 argues that the Magistrate Judge was wrong in "finding that neither the Asset Purchase Agreements, nor the Consulting Agreements entitle the AES Plaintiffs to 'offset' and/or 'deduct' reasonable costs, expenses and attorney fees." (Dkt. # 113, Pg. ID 3692.) For some reason that is not clear to the court, Plaintiffs assert nearly an identical objection in their Objection #2, as such, both are considered together.

The Asset Purchase Agreement contains an indemnification clause that determines when and how Plaintiffs might recover certain costs and attorneys' fees from the Directional Entities (the sellers) and Rotondo (the guarantor of the agreement). That indemnification agreement reads in whole:

> 6. Indemnification
>
> 6.1 Each Seller and Guarantor covenant and agree that, regardless of any investigation at any time made by or on behalf of Purchaser or of any information Purchaser may have in respect thereof, the Sellers and Guarantors will jointly and severally indemnify and hold harmless Purchaser from, for and against any loss, damage, liability or deficiency (including without limitation, reasonable attorneys' fees and other costs and expenses incident to any suit, action, investigation or other proceeding) arising out of or resulting from, and will pay Purchaser on demand the full amount of any sum which Purchaser may pay or become obligated to pay on account of, (i) any false representation or the breach of any warranty made by any Seller and/or any of Sellers' Affiliate(s) under this Agreement, and Related Agreement, or any closing documents; (ii) any federal, state, local or other tax of any nature existing prior to the date of Closing and owed by any Seller and/or any of Sellers' Affiliate(s); (iii) any failure of any Seller and/or Sellers' Affiliates to perform or observe any term, provision, covenant, agreement or condition under the Letter of Intent, this Agreement, any Related Agreement, or any closing documents or to be performed or observed by any Seller and/or Sellers' Affiliates; (iv) any claim, litigation or other action of any nature arising out of any act performed, transaction entered into or state of facts suffered to exist by any Seller and/or Sellers' Affiliate(s) prior to the date of Closing; and (v) without limiting the generality of the foregoing, any claim of any employee of any Seller and/or Sellers' Affiliate(s), or of any other person, arising out of or relating to any employee stock option, bonus retirement, profit

>sharing, pension or other similar plan of any Seller and/or Sellers' Affiliate(s) or the operation or termination of any such plan. In addition, all Sellers and Guarantor will jointly and severally indemnify and hold harmless Purchaser from, for and against and costs and expenses (including actual attorney's fees) which Purchaser incurs to enforce the indemnification obligations of the Sellers and Guarantor hereunder. Purchaser shall have a right to offset such losses, damages, liabilities, deficiencies, costs, expenses and attorneys' fees against any sum owed by Purchaser or Purchaser's affiliates to the Seller and/or any Guarantor. For the purposes of this Agreement, an "Affiliate" of a party shall mean any person or entity controlled by or under common control with such party or the party's principal.

(Dkt. # 50-2, Pg. ID 901.)

In interpreting this agreement, the Magistrate Judge held that the indemnity agreement is, "at best, extremely ambiguous" and that "the Court is not persuaded that the instant interpleader action necessarily "arises out of" or "results from" the March 2013 asset purchase agreements (as opposed to rights established under federal and/or state law regarding interpleader actions)." (Dkt. #110, Pg. ID 3648.) The court agrees with Plaintiffs that this holding is in error.

First, as to the parenthetical in the quoted holding above, the court believes this misconstrues the nature of any action before a federal court. All actions could be said to arise out of both some set of facts (a transaction or some occurrence) *and* some federal and/or state law that gives plaintiff a cause of actions and bestows jurisdiction upon this court. It creates a false dichotomy to say that an action arises out of either facts or law; federal actions are creatures of laws applied to facts, and thus "arise out of" both. It is true that law regarding interpleader actions makes this suit in this form possible, but it is also the case that the Asset Purchase Agreement established the consulting-fee payment scheme from which this action arises.

5

The Asset Purchase Agreement states, condensed and in relevant part, that Rotondo and the Directional Entities will indemnify Plaintiffs

> against any loss, damage, liability or deficiency (including without limitation, reasonable attorneys' fees and other costs and expenses incident to any suit, action, investigation or other proceeding) arising out of or resulting from . . .  any claim, litigation, or other action of any nature arising out of any act performed, transaction entered into or state of facts suffered to exist by any Seller and/or Sellers' Affiliate(s) prior to the date of Closing.

(Dkt. # 50-2, Pg. ID 901.)

The Magistrate Judge appears to be concerned that this action is one to interplead funds initiated by Plaintiffs, as opposed to some more traditional cause of action relating to a breach of contract or some similar situation. But, the agreement does not limit the sort of action from which Plaintiffs might claim attorneys' fees. In fact the agreement specifies that "any claim, litigation, or other action of any nature" might form the basis of a claim under this agreement.

Further, this action is related to a "state of facts suffered to exist by" Rotondo. Unpaid tax liabilities and the resulting IRS lien, in conjunction with complications related to the alleged superiority of Akouri's claim to assets owned by Apex Admin and/or the Directional Entities, has complicated the Plaintiffs' once-simple task of paying consulting fees to Rotondo. This state of facts placed the Plaintiffs in a precarious position, and motivated the initiation of this action. The action therefore arises out of and is related to the Asset Purchase Agreement and the state of facts with reference to Rotondo's tax liability. The Plaintiffs are entitled to attorneys' fees from Rotondo and the Directional Entities.

This determination, however, does not fully dispose of Plaintiffs' Objection. The above analysis settles the "what" (what are Plaintiffs entitled to) but not the "how" (how may Plaintiffs collect attorneys' fees). They also claim that the agreement allows them to deduct attorneys' fees from the consulting fee owed to Rotondo. In the revised R&R, the Magistrate Judge also held that the latter part of the indemnification agreement, which addresses Plaintiffs' right to offset losses (like attorneys' fees) incurred "to enforce indemnification obligations of [Rotondo]," does not give Plaintiffs the right to make such deductions because this action was not to enforce the indemnification obligations of Rotondo. (Dkt. # 110, Pg. ID 3649 n.12.) The Magistrate Judge referred to this clause as the Offset Provision. The court agrees with the Magistrate Judge that the Offset Provision does not entitle Plaintiffs, at this time, to automatically deduct attorneys' fees from the consulting fees owed to Rotondo.

The indemnification clause sets up a mechanism for the collection of attorneys' fees arising out of litigation related to the Asset Purchase Agreement. The clause states that Rotondo "will pay Purchaser *on demand* the full amount of any sum which Purchaser may pay or become obligated to pay." (Dkt. # 50-2, Pg. ID 901.) Thus, at the conclusion of this litigation, Plaintiffs will be able to make a demand on Rotondo for their attorneys' fees in this matter and Rotondo will have the opportunity to satisfy the demand. The Offset Provision only operates with respect to costs and fees incurred to enforce the indemnification provision, for example, if Rotondo refuses to satisfy the demand and Plaintiffs incur costs attempting to collect fees, then any subsequent costs incurred in that effort, after a demand is made and rejected or goes unsatisfied, may be deducted from the fees owed to Rotondo in the future.

7

Accordingly, Plaintiffs Objection 1.1 and 2 are sustained in part and overruled in part. Under the Asset Purchase Agreement, Plaintiffs are entitled to attorneys' fees arising from this litigation, but they may not deduct those fees as an offset against the consulting fees owed to Rotondo.[1]

### 2. Plaintiffs' Objection 1.2

As to the second subpart of their first objection, Plaintiffs also point out that in the revised R&R, the Magistrate Judge "does not make a determination of the AES Plaintiffs' request for dismissal from the present matter." This objection appears to be correct. Though in the first R&R the Magistrate Judge included a section F.1.b. entitled "The AES Plaintiffs Should Not Be Dismissed from the Action," that part appears to be excised from the revised R&R, but not replaced with any language specifically recommending dismissal of Plaintiffs after funds have been inpleaded.

Plaintiffs suggest, in their Objection, that "[i]t can be deduced, based on [the Magistrate Judge's] recommendation that Akouri's cross-claim against AES Plaintiffs be dismissed and that the IRS's Motion for Summary Judgment be granted, that [the Magistrate Judge] is also recommending that the AES Plaintiffs be dismissed." (Dkt. # 113, Pg. ID 3693.) However, the Magistrate Judge's concluding "Recommendation" section clearly states that Plaintiffs' request for dismissal should be denied and that Plaintiffs should be required to provide an accounting of the Consulting Fees accrued to date.

---

[1] The court notes that this means that the full value of the consulting fees are owed to Rotondo (and, in turn, to the IRS by way of its tax lien). The Offset Provision has not yet been triggered and Plaintiffs will have to seek attorneys' fees by way of the demand process explained above, and then *later* may be entitled to offset collection costs from *future* consulting fees owed to Rotondo.

8

Generally, discharge should be readily granted unless there are counterclaims or crossclaims against the stakeholder or there are serious charges that the plaintiff-stakeholder commenced the action in bad faith. *See Sun Life Assurance Co. v. Thomas*, 735 F. Supp. 730, 732-33 (W.D. Mich. 1990); *see also William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 361 (S.D.N.Y. 2008); *Underwriters Group, Inc. v. Clear Creek Indep. Sch. Dist.*, No. G-05-334, 2006 WL 1852254, at *5 (S.D. Tex. June 30, 2006). Here, the Magistrate Judge recommended dismissal of Akouri's cross-claims (a recommendation the court will accept), and while Plaintiffs arguably played a roll in creating some of the problems at issues here (by ignoring Akouri's refusal to subordinate its security interest in Apex Admin), there are no allegations that this action was commenced in bad faith. However, the Magistrate Judge also recommend (and no party appears to have objected to the recommendation) that Plaintiffs be required to provide an accounting of the Consulting Fees to be inpleaded in order to ensure that the attorneys' fees requested (and denied) in this case have not been improperly withheld by Plaintiffs. (Dkt. # 110, Pg. ID 3645 n.10.) Upon completion of that accounting and once the full amount of Consulting Fees have been inpleaded, Plaintiffs may then be entitled to dismissal, but they are not yet. This Objection is overruled.

### 3. Plaintiffs' Objections 1.3 and 3 and IRS' Objection 1

In the third subpart of their first Objection and in Objection 3, Plaintiffs object to the revised R&R's conclusion that Akouri has created a question of fact regarding the ownership of the customer accounts at the time Plaintiffs purchased them. The IRS also lodges this objection, and no other. If Apex Admin owned the accounts, then Akouri

9

would have a claim to the consulting fees, but if the Directional Entities owned the accounts, Akouri has no such claim. (*See* R&R 30.) Plaintiffs and the IRS disagree with the Magistrate Judge's conclusion because they say that Akouri offers only conjecture as to the ownership of the Customer Accounts and has produced no evidence that Apex Admin owned the customer accounts at issue. Plaintiffs however have advanced probative evidence tending to prove that the Customer Accounts were in fact owned by the Directional Entities.

The court sustains these objections and concludes that the Magistrate Judge incorrectly concluded that there was a genuine issue of material fact as to the ownership of the Customer Accounts. Akouri points only to the absence of (or more accurately, Plaintiffs failure to produce) the Customer Account contracts, arguing that they are the only documents that can resolve this question. The Magistrate Judge and Akouri thought Plaintiffs' failure to produce such documents was enough to create a dispute of fact. The R&R analyzes the evidence offered by Plaintiffs attempting to prove that the contracts were owned by the Directional Entities, and, while finding some of it probative, concludes that it is not conclusive. (R&R 31-33). But then the R&R does not identify *any* evidence offered by Akouri to refute Plaintiffs' probative evidence on the issue. To survive summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

While it is well understood that the absence of a record may tend "to prove that the matter did not occur or exist," *see* Federal Rule of Evidence 803(7), the absence of the Customer Account contracts appears to stem from Akouri's failure to obtain them

during discovery, which concluded before the pending motions were filed. The R&R notes that Akouri tried to obtain the contracts from Plaintiffs, "including via the filing of a motion to compel," but was unsuccessful. However the referenced motion to compel was filed in the state court, not in this case, and Akouri never sought discovery relief from this court nor indicated that it was not getting its due in discovery from the other parties. Further, Plaintiffs clarified in an email dated July 22, 2015 that they were not given the original contracts when they purchased the accounts. (Dkt. # 89, Pg. ID 2910.) This establishes that Plaintiffs could not produce the contracts, but it does not establish that they did not exist in the hands of other Defendants (like Rotondo) or third parties that could have been subpoenaed. Thus the absence of the contracts at this point is probative only of Akouri's failure to obtain them during discovery (which has concluded) and Akouri has offered nothing but some metaphysical doubt as to the ownership of the Customer Account contracts.

The objection is sustained, and the court holds that Akouri has not created a genuine issue of material fact as to the ownership of the Customer Account contracts.[2]

## B. Plaintiffs' Objection 4

Plaintiffs' fourth objection states an agreement with the revised R&R's conclusion that Akouri's cross-claim should be dismissed, but argues that dismissal should be on

---

[2] Further, it is unclear whether this court could even make an alternative finding, if it was so inclined. The issue appears to have been litigated by the parties in the parallel state court action and the state court concluded that Plaintiffs "purchased certain assets of AS Holdings, AS South, Pinnacle HR, and Apex HR (the "Directional Entities")." (Dkt. # 63-2, Pg. ID 1883.) The "certain assets" referred to are the Customer Accounts. To the extent the issue of ownership of the Customer Accounts was already litigated (or could have been litigated) and decided in the state courts, this court would be precluded from making a contrary finding under the doctrines of issue and claim preclusion.

the merits with prejudice, instead of based on the court's discretion not to exercise supplemental jurisdiction over the single remaining state-law claim. Plaintiffs argue that the parallel state court litigation on this issue precludes Akouri's claims here under claim or issue preclusion principles, and so dismissal with prejudice is appropriate. However, as the question of whether to reach the merits of a state law claim (or not) once all federal claims have been resolved is within the discretion of the court, the court agrees with the Magistrate Judge that dismissal under 28 U.S.C. § 1367(c)(3) is appropriate here: there are no federal claims left; it is not clear that Michigan courts would preclude this action; the preclusion issue turns on whether Michigan courts—as a matter of Michigan law—would give preclusive effect to the earlier ruling; and the parties continue to litigate the general matter in state court. The objection is overruled.

### C. Plaintiffs' Objection 5

Plaintiffs' final objection amounts to a quibble with the Magistrate Judge's recitation of the facts, complaining that the facts "imply that [Akouri] had an interest in the assets purchased by the AES Plaintiffs." If any such implication is present, it is resolved by this court's decision that there is no genuine dispute over the ownership of the Customer Accounts. The objection is overruled.

### D. Akouri's Objection 1

Akouri's sole objection is that the Magistrate Judge was incorrect to recommend granting summary judgment to the IRS because Akouri has a senior perfected security interest in the assets of Apex Admin and there is a genuine dispute of material fact as to whether the Customer Accounts are owned by Apex Admin or the Directional Entities. This objection is no longer valid as the court has determined that there is no genuine

dispute as to the ownership of the Customer Accounts. The objection is therefore overruled.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiffs' Objections 1.1, 1.3, 2, and 3 (Dkt. # 113) and the IRS's Objection 1 (Dkt. # 115) are SUSTAINED consistent with this opinion. Plaintiffs' Objections 1.2, 4 and 5, and Akouri's Objection 1 (Dkt. # 114) are OVERRULED. The Magistrate Judge's Report and Recommendation is ADOPTED CONSISTENT WITH THIS OPINION AND INCORPORATED BY REFERENCE.

IT IS FURTHER ORDERED that Defendant IRS' Motion for Summary Judgment (Dkt. # 44) is GRANTED, Intervenor Akouri's Motion for Partial Summary Judgment (Dkt. # 45) is DENIED, Plaintiffs' Motion to Interplead Funds, for Dismissal, and for Costs and Attorneys' Fees (Dkt. # 46) is GRANTED IN PART AND DENIED IN PART consistent with this opinion. The court will not grant Plaintiffs' request for dismissal and will instead direct Plaintiffs to PROVIDE AN ACCOUNTING of the Consulting Fees accrued to date. Akouri's Cross-Claim is DISMISSED (Dkt. # 33).


    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: September 23, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 23, 2016, by electronic and/or ordinary mail.

                                 S/Lisa Wagner
                                 Case Manager and Deputy Clerk
                                 (313) 234-5522