**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AES-APEX EMPLOYER SERVICES, INC. and
AES-APEX EMPLOYER SOLUTIONS, INC.,

      Plaintiffs,

v.                                                                        Case No. 13-14519

DINO ROTONDO, RICHARD MARK, and
UNITED STATES, DEPARTMENT OF
TREASURY – INTERNAL REVENUE SERVICE,

      Defendants.
                                        /

**OPINION AND ORDER DENYING WITHOUT PREJUDICE THE GOVERNMENT'S MOTION FOR CONTEMPT AND SANCTIONS; DENYING AKOURI'S MOTION TO COMPEL; AND ORDERING TARGETED DISCOVERY**

Before the court is Defendant the United States Internal Revenue Service's Motion for Contempt and Sanctions against Plaintiffs AES-Apex Employer Services, Inc. and AES-Apex Employer Solutions, Inc. (collectively "Plaintiffs") and their counsel, Vandeveer Garzia P.C. (Dkt. # 155.) Additionally, Intervener Akouri filed a Motion to Compel disclosure of Plaintiffs' accounting and supporting source data. (Dkt. # 164.) Both motions have been fully briefed and the court held a hearing on December 5, 2017 at which counsel for all parties were present as well as counsel for Vandeveer Garzia P.C and counsel for Akouri. For the reasons stated on the record at the hearing and herein, the court will deny without prejudice the IRS's Motion for Contempt and Sanctions, deny Akouri's Motion to Compel, and order targeted discovery regarding Plaintiffs' finances.

# I. BACKGROUND

This litigation, which has lasted more than four years, is a round-robin of who has a valid claim to certain funds. A brief and admittedly simplistic review of the central facts and procedural history is necessary to understand the basis for the present motions.

The funds in dispute first existed as "customer accounts" for which Dino Rotondo performed consulting services. He is owed payment for his services on those accounts to this day. These customer accounts were owned by a company, on the assets of which Akouri allegedly held and continues to hold a lien. The company sold the customer accounts to Plaintiffs, thereby passing its debt to Rotondo onto Plaintiffs. Akouri asserts that its alleged lien on the customer accounts also transferred in the sale to Plaintiffs and, therefore, it is entitled to the funds owed to Rotondo. To complicate matters, Rotondo owes money to the IRS. As a result, the IRS claims that it is entitled to the funds due by Plaintiffs to Rotondo under the customer accounts.

Plaintiffs filed this action in October 2013 seeking to interplead the funds owed to Rotondo, deposit them with the court, and be dismissed from the proceedings. (Dkt. # 1.) Akouri intervened in June 2014 and filed a complaint against Plaintiffs and Rotondo. (Dkt. # 33.) Akouri alleged Plaintiffs and Rotondo violated the Michigan Uniform Fraudulent Transfers Act and sought a declaratory judgment that its alleged lien on the consulting fees owed to Rotondo is senior to the IRS's claims. However, Akouri, in filing its intervener complaint, did not assert a claim against the consulting fees generally or request a finding regarding its entitlement to the fees beyond a declaration that it has "a senior perfected lien status." (Dkt. # 33, Pg. ID 344.) In other words, Akouri's complaint

began from the assumed conclusion that it holds a valid lien on the consulting fees owed to Rotondo.

In February 2016, Plaintiffs filed an accounting with the court indicating that they owed Rotondo $333,405, but the accounting also showed that $265,190 of that amount had been paid to Plaintiffs' attorneys, leaving only $68,215 available to deposit with the court.

The IRS filed a Motion for Summary Judgment (Dkt. # 44), Akouri filed a Motion for Partial Summary Judgment (Dkt. # 45), and Plaintiffs filed a Motion to Dismiss (Dkt. # 46). Following full briefing and a hearing, Magistrate Judge Grand issued a Report and Recommendation (R&R) regarding the various motions in March 2016. (Dkt. # 110.) Magistrate Judge Grand concluded that "a question of fact exists as to whether the Directional Entities or Apex Admin actually owned the Customer Accounts that were transferred to the [Plaintiffs]." (Dkt # 110, Pg. ID 3662.) Which entity previously owned and sold the customer accounts to Plaintiff is material because Judge Grand held that Akouri has a perfected security interest in only the assets of Apex Admin and not the assets of Directional Entities. (*Id.* at 3659.) Therefore, if Apex Admin sold the customer accounts, Akouri may have a lien on the consulting fees owed to Rotondo, but if Directional Entities sold them, Akouri would have no claim on the consulting fees.

In September 2016, this court adopted in part and rejected in part the R&R. Importantly, the court agreed with Judge Grand that *even if* Akouri has an interest in the consulting fees, its interest is subordinate to the IRS's interest. (Dkt. # 135.) Therefore, the court denied Akouri's request for a declaratory judgment, dismissed its complaint,

3

and granted the IRS's Motion for Summary Judgment. (*Id.*) The court also granted Plaintiffs' Motion to Interplead Funds, but denied its request to be dismissed from the proceedings until the funds owed were deposited with the court. (*Id*). Further, in sustaining an objection to the R&R, this court concluded there is no genuine issue of material fact as to Directional Entities' ownership of the customer accounts. (Dkt. # 135, Pg. ID 4844.)

By March 2017, Plaintiffs had not deposited the funds with the court. In response, the IRS filed a Motion to Compel the deposit in accordance with the court's September 2016 order and for clarification of the court's order. (Dkt. # 143.) In July 2017, the court granted the IRS's motion and ordered Plaintiffs to deposit the amount owed outstanding with the court. The court also held that Plaintiffs could not have reasonably believed that the court's September 2016 order allowed them to deduct their attorney fees from the amount owed and clarified that they could not do so. The court also clarified that Akouri's claim against the IRS for lien priority had been dismissed with prejudice.

In August 2017, Plaintiffs provided an updated accounting, but Plaintiffs did not deposit any funds. Instead Plaintiffs filed a Notice of Inability to Comply and have attached an affidavit from their Director of Finance stating that they "do not possess sufficient funds to comply" with the July 2017 order. (Dkt. # 152.) Plaintiffs request that the case be sent to facilitation to develop a payment plan. They are also in the process of preparing the "source data" underlying and supporting their accounting. They intend to submit the data under a stipulated protective order. Plaintiffs have not shared this information with Akouri because they contend Akouri is no longer a party to the case.

Akouri has filed a Motion to Compel disclosure of the source data. (Dkt. #164.) The IRS has filed a Motion for Contempt and Sanctions based on Plaintiffs' failure to comply with the court's July 2017 order. (Dkt. # 155.)

## II. STANDARD

### A. Motion for Contempt

"Contempt is a violation of 'a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *In re Jackson*, 554 B.R. 156, 164 (B.A.P. 6th Cir. 2016) (citing *Elec. Workers Pension Trust Fund of Local Union v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003). "In order to hold a litigant in contempt, the movant must produce clear and convincing evidence that shows that '[the litigant] violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Gary's Elec. Serv. Co.*, 340 F.3d at 379 (citing *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987).

"Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Id.* (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). More specifically, the contemnor "has the burden to demonstrate that (1) it was unable to comply with the court's order, (2) its inability to comply was not self-induced, and (3) it took 'all reasonable steps' to comply." *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795 (6th Cir. 2017) (citing *Gary's Elec. Serv. Co.*, 340 F.3d at 381-83). The contemnor "must show categorically and in detail why he or

she is unable to comply with the court's order." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir.1996) (quotation omitted).

### B. Motion to Compel

Fed. R. Civ. P. 26(b) allows *parties* to a case to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." "Relevant evidence" is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" where "the fact is of consequence in determining the action." Fed. R. Evid. 401. Information need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). "However, district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

### III. ANALYSIS

### A. Motion for Contempt

The IRS argues that Plaintiffs possessed the requisite funds to comply with the court's July 2017 order, but have diverted the funds to other expenses in violation of the court's order, namely attorney fees. Plaintiffs do not dispute their failure to comply with the court's order. Rather they claim that such failure is not their fault and they are "doing their best" to comply with the court's order. They have submitted an affidavit from their Director of Finance stating that they "do not possess sufficient funds to comply" with the order (Dkt. #158-1) and they offered at oral argument to provide tax returns demonstrating that they have "a very small profit margin." Plaintiffs further argue they

have acted in good faith by continuing to deposit money with the court as they are able. Given the present circumstances, the court will stop short of finding Plaintiffs in contempt *at this time*.

However, Plaintiffs' failure to comply with "a definite and specific order of the court requiring [them] to perform" a particular act is undisputed. *Gary's Elec. Serv. Co.*, 340 F.3d at 379. As stated by the court at oral argument, the reason for that failure cannot be determined based on the present record. Plaintiffs have not provided sufficient evidence to show that they are unable to comply with the court's order, that their alleged inability to comply was not self-induced, nor that they took all reasonable steps to comply. *Gascho*, 875 F.3d at 795. Good faith is not sufficient. The court shares the IRS's questions concerning how and why Plaintiffs' funds have dissipated. Recognizing that a scheduling order "may be modified only for good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4), the court finds that the best course of action is to reopen discovery for the targeted purpose of reviewing Plaintiffs' financial records to verify their claim that they are financially unable to comply with the court's order, and that their inability is not self-induced.

In relation to that purpose, the court is cognizant that "[i]nformation is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense and is proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note to 2015 Amendment. In assessing the proportionality the court should look to:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

As Plaintiffs' sole owner, Otto was responsible for ensuring Plaintiffs' compliance with the court's order. *See generally Gascho*, 875 F.3d at 795 (6th Cir. 2017) (holding that "non-party corporate officers can be held in contempt for the corporation's failure to comply with the court's order, so long as they were responsible for the corporation's conduct and failed to take appropriate action to ensure performance"). During his deposition, Otto admitted to paying attorney fees out of funds that would otherwise be owed to Rotondo. (Dkt. #159-3.) At oral argument on the present motion, counsel for Plaintiffs indicated that Plaintiffs' attorney fees have been paid by funds advanced by some of Otto's other companies on behalf of Plaintiffs. These facts raise questions regarding the financial transactions by and among Otto and the companies he owns, including Plaintiffs. In lieu of issuing per day sanctions against Plaintiffs until they comply with the court's order, the court concludes that the better course of action *at this time* is to allow the Government to conduct targeted discovery into the financial records of Plaintiffs, David Otto, and his companies. This discovery is not only "important" to resolving the present dispute between the parties, it is critical. *See* Fed. R. Civ. P. 26(b)(1). Only through a more developed record can the court assess Plaintiffs' "inability to pay" claim.

For if Plaintiffs' assessment of their financial situation is accurate, accumulation of per day sanction fees against Plaintiffs that will go unpaid would seem to provide little benefit to any party. In that instance, perhaps facilitation to develop a payment plan would be appropriate. However, discovery may also reveal that Plaintiffs have inappropriately diverted funds as the IRS suggests. Under those circumstances, the court would welcome a renewed motion for contempt by the Government[1] and sanctions may very well be appropriate. Discovery is necessary to reveal which is the situation because the Government does not presently have access to the relevant information. *See* Fed. R. Civ. P. 26(b)(1). The Government's Motion for Contempt and Sanctions will be denied without prejudice, but the Government may proceed with discovery regarding the financial records of Plaintiffs, David Otto, and his companies.

As stated by the court at the hearing, Plaintiffs' Counsel are not party to this case. They were not subject to the court's order and thus, could not be in noncompliance with the order. Perhaps discovery may reveal inappropriate conduct by Plaintiffs' Counsel that would warrant attention from the court, but there is no present evidence to that effect and thus the court will deny the Government's motion against Plaintiffs' Counsel without prejudice.

---

[1] At the hearing on the motion, the court indicated it was likely to suspend consideration of the present motion against Plaintiffs, but upon further reflection, the court has determined that the better course of action is to deny the Government's motion without prejudice and the Government may re-file the motion if warranted after discovery.

9

## B. Motion to Compel

Akouri argues it is entitled to review the accounting and supporting source data this court ordered Plaintiffs to produce in its September 2016 and July 2017 orders. Plaintiffs argue that Akouri is not entitled to receive this information because it is no longer a party to this litigation. Akouri responds that it remains an interested party in this litigation because it holds a lien judgment against Plaintiffs' assets regardless of whether its lien is junior to the IRS. Akouri mistakenly believes that the R&R as adopted by this court established that it has a secondary lien on Plaintiffs' assets.

In contrast, the court held that *even if* Akouri has an interest, its interest is subordinate to the IRS's interest and denied Akouri's request for a declaratory judgment on that basis. Magistrate Judge Grand never explicitly determined whether Akouri has a valid lien on the consulting fees, even if albeit junior to the IRS, and he was not required to make that determination in order to address Akouri's complaint and motions. Thus, when Magistrate Judge Grand concluded that Akouri did not hold a senior lien, Akouri's complaint was dismissed in its entirety.

Nevertheless, any question left open on the issue of Akouri's interest was resolved by this court's opinion and order in September 2016. While not explicitly stated, the court's findings in the order foreclosed any possible theory under which Akouri could have an interest in fees due to Rotondo under the customer accounts.

Akouri recognized that its lien applied to only Admin Apex and the court held that Directional Entities owned the customer accounts. Akouri alternatively argued that Directional Entities was a sham corporation of Apex Admin and therefore Akouri's lien

10

applied to Directional Entities' assets as well. The R&R found a question of fact regarding the viability of this "sham" theory and acknowledged that such theory would give Akouri a junior lien on the consulting funds. (Dkt. #110, Pg. ID 3667.) Plaintiffs objected to this finding in the R&R arguing that it implied that Akouri "had an interest in the assets purchased by [Plaintiffs]." (Dkt. # 135, Pg. ID 4845.) This court overruled that objection stating, "If any such implication is present, it is resolved by this court's decision that there is no genuine dispute over [Directional Entities'] ownership of the Customer Accounts." (*Id.*)

The court stated in a footnote that the related proceeding in the state court had determined that Directional Entities validly owned the customer accounts and this court is bound by that determination. (*Id.* at 4844.) While this court did not elaborate on the state court's opinion, the state court held that even if Apex Admin owned Directional Entities or the two companies were a single entity—the essence of Akouri's sham argument—Akouri still would not have an interest in the accounts. (Dkt. # 63-2, Pg. ID 1883.) According to the state court, Akouri held a security interest in only the membership interest of the entities and not in the assets of the entities themselves. (*Id.*) Thus, Directional Entities validly owned the accounts in any case and Akouri's judgment lien was not valid against Directional Entities. (*Id.*) The implication of all of the above findings is that Akouri has no present interest in the customer accounts transferred to Plaintiffs nor the funds owed to Rotondo. As a result, this court clarified in July 2017 that Akouri's claim was dismissed with prejudice. (Dkt. # 135.)

Moreover, Akouri was not a party to the case when the court ordered Plaintiffs to

11

provide an accounting. The first order by this court requiring Plaintiffs to deposit money and provide an accounting was in September 2016—the same order that dismissed Akouri from the action. The court's second order reaffirming Plaintiffs' obligation to deposit funds with the court was in July 2017; in the same order the court confirmed Akouri's dismissal from the action with prejudice. Because Akouri has been dismissed from this litigation and its dismissal coincided with the court's accounting order, Akouri cannot claim to be a party entitled to disclosure pursuant to the order. Akouri's motion to compel will be denied.

## IV. CONCLUSION

Plaintiffs have undisputedly failed to comply with this court's July 2017 order. To evaluate whether Plaintiffs' have the ability to comply with the order and identify the proper course forward, the parties will proceed with targeted discovery. Akouri, having no interest in the disputed funds and having been dismissed from this action, is not entitled to disclosure of the accounting produced pursuant to this court's September 2016 and July 2017 orders. Accordingly,

IT IS ORDERED that Akouri's Motion to Compel (Dkt. # 164) is DENIED.

IT IS ORDERED that the Government's Motion for Contempt and Sanctions (Dkt. # 155) is DENIED WITHOUT PREJUDICE.

IT IS ORDERED that the Government may conduct targeted discovery into the financial records of Plaintiffs and their sole owner, David Otto as well as his companies. **The parties will report to the court for a TELEPHONE status conference regarding their discovery efforts on February 14, 2018 at 10:00 a.m. (The court will initiate the call.)**

                                      s/Robert H. Cleland
                                      ROBERT H. CLELAND
                                      UNITED STATES DISTRICT JUDGE

Dated:   December 12, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 12, 2017, by electronic and/or ordinary mail.

                                      s/Lisa Wagner
                                      Case Manager and Deputy Clerk
                                      (810) 292-6522