# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION
_____

AES-APEX EMPLOYER SERVICES, INC.
and AES-APEX EMPLOYER SOLUTIONS, INC.,

    Plaintiffs,

v.                                                                         Case No. 13-14519

DINO ROTONDO, RICHARD MARK, and
UNITED STATES DEPARTMENT OF TREASURY
INTERNAL REVENUE SERVICE,

    Defendants

and

AKOURI INVESTMENTS, LLC,

    Intervenor.

_____/

**OPINION AND ORDER GRANTING DEFENDANT IRS'S MOTION FOR DETERMINATION THAT DINO ROTONDO CONTINUES TO EARN CONSULTING FEES, GRANTING DEFENDANT IRS'S MOTION FOR DISBURSEMENT OF FUNDS, AND ORDERING FURTHER BRIEFING**

Before the court are two motions filed by Defendant Internal Revenue Service: a Motion for Determination that Dino Rotondo Continues to Earn Consulting Fees (ECF No. 179) and a Motion for Disbursement of Funds Held in the Court's Registry (ECF No. 183). Both have been thoroughly briefed. (ECF Nos. 180–81, 186–87, 189–90.) The court has reviewed the briefing and determines that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant both motions. The court will also order further briefing to help resolve an outstanding issue.

# I. BACKGROUND

In 2013, AES[1] filed this interpleader action regarding consulting fees owed to Dino Rotondo. (ECF No. 1.) AES sought "permission to pay 'Consulting Fees' which continue to accrue into the Court" to allow the various claimants to litigate, and the court to determine, their respective interests in the funds. (*Id.*, PageID.12.) Among those asserting claims for the consulting fees was the IRS, based upon Rotondo's significant tax liabilities. Ultimately, the court granted summary judgment for the IRS on its claim for the consulting fees.

The consulting fees arose pursuant to two related sets of agreements, the Asset Purchase Agreements and the Consulting Agreements. Under the Purchase Agreements, AES purchased certain customer accounts from various Rotondo-related entities ("Sellers"). Under the Consulting Agreements, a percentage of the gross profits received from these customer accounts was to be paid to Rotondo in the form of consulting fees.

The Purchase Agreements contained an indemnification clause, which sets up a mechanism for the collection of attorneys' fees arising out of litigation related to the Purchase Agreements. The clause states that Rotondo "will pay [AES] on demand the full amount of any sum which [AES] may pay or become obligated to pay." (ECF No. 178-1, PageID.5832.) The court explained in its September 23, 2016 Opinion that this clause operates such that "at the conclusion of this litigation, Plaintiffs will be able to make a demand on Rotondo for their attorneys' fees in this matter and Rotondo will have the opportunity to satisfy the demand." (ECF No. 135, PageID.4840.)

---

[1] AES-Apex Employer Services, Inc. and AES-Apex Employer Solutions, Inc. are referred to collectively as "AES."

The indemnification clause also contains an Offset Provision. In the September 2016 Opinion, the court interpreted the Offset Provision as operating only with respect to costs and fees incurred to enforce the indemnification provision. "[F]or example, if Rotondo refuses to satisfy the demand and Plaintiffs incur costs attempting to collect fees, then any subsequent costs incurred in that effort, after a demand is made and rejected or goes unsatisfied, may be deducted from the fees owed to Rotondo in the future." (*Id.*) Thus, the court held that AES was "entitled to attorneys' fees arising from this litigation, but [it] may not deduct those fees as an offset against the consulting fees owed to Rotondo." (*Id.*, PageID.4841.) It was further noted by the court "that this means that the full value of the consulting fees are owed to Rotondo (and, in turn, to the IRS by way of its tax lien). The Offset Provision has not yet been triggered and Plaintiffs will have to seek attorneys' fees by way of the demand process explained above, and then later may be entitled to offset collection costs from future consulting fees owed to Rotondo." (*Id.* n.1.)

Consequently, AES was ordered to provide an accounting of the consulting fees accrued to date and deposit them with the court without deducting any attorneys' fees. (*See* ECF No. 149, "the July 2017 Order.") AES eventually did so pursuant to a stipulated order in May 2018, depositing with the court a total of $223,995.09, which represented the consulting fees owed to Rotondo for the periods prior to July 31, 2017. (ECF No. 173, PageID.5811.) The order explained that this deposit was without prejudice to AES's appeal of the court's July 2017 Order and that the parties disputed whether AES owed any funds for the periods after July 31, 2017. (*Id.*) AES appealed the court's July 2017 order. (ECF No. 160.)

3

While the appeal was pending, the parties continued to litigate whether Rotondo had accrued any consulting fees since July 31, 2017. (ECF No. 175.) The issue identified by the parties was whether "[AES's] terminations of Defendant Rotondo's consulting agreements were valid terminations or, alternatively, were breaches of the agreements." (*Id.*, PageID.5814.) To resolve this question, the parties agreed that the IRS would "file a motion for partial judgment on a stipulated factual record following targeted and limited discovery into [AES's] bases for termination of the agreements." (*Id.*, PageID.5815.) A stipulated record was filed on September 4, 2018, which the parties agreed "constitutes a complete stipulated factual record regarding the dispute over whether Defendant Rotondo has accrued any consulting fees since July 31, 2017, except as set forth in paragraph 18 below."[2] (ECF No. 178, PageID.5822.) This was followed by the instant Motion for Determination that Dino Rotondo Continues to Earn Consulting Fees. (ECF No. 179.)

The Sixth Circuit issued an opinion on May 17, 2019, affirming that "AES owes Rotondo the full amount of the Consulting Fees, without deductions." (ECF No. 182, PageID.5995.) Although the Sixth Circuit concluded that "[t]he district court properly interpreted the agreements between AES and Rotondo [and] properly granted summary judgment in favor of the IRS's claim for the Consulting Fees," it interpreted the scope of the Offset Provision more broadly than this court had. (*Id.*, PageID.6000.) This court

---

[2] Paragraph 18 states that "[i]n addition to the stipulated facts above, the parties may refer to any Court order on file in his case, and may also refer to any document filed in this action by any party to this action as evidencing the filing of such document for such purposes as showing claims asserted or notice to other parties, but not for the purpose of demonstrating the truth of any facts contained in such filings by parties, except that a party-filed document may be referenced to assert against the filer any statement therein constituting an admission under Fed. R. Evid. 801(d)." (ECF No. 178, PageID.5825–26.)

4

found that "[t]he Offset Provision only operates with respect to costs and fees incurred to enforce the indemnification provision." (ECF No. 135, PageID.4840.) The Sixth Circuit, however, found that "the Offset Provision is best read as referring to *both* the costs of enforcing the Indemnification Provision *and* the total costs that could be indemnified." (ECF No. 182, PageID.5995.)

Subsequently, the IRS filed the present Motion for Distribution of Monies Currently Held in the Court's Registry, Consistent with the Sixth Circuit Decision, and Request for Status Conference Regarding the Additional Disputed Funds. (ECF No. 183.) The court held a status conference with counsel on June 10, 2019. At that time, it appeared that the disbursement of the funds was not disputed. AES filed a response shortly thereafter, though, seeking a limitation on the court's release of the funds to the IRS. (ECF No. 186.) Specifically, AES asked that the release of the escrow monies to the IRS be without prejudice to its rights to a refund should the court later find AES entitled to the funds. Regarding the additional disputed funds, the parties agreed to file supplemental briefing to clarify the effect of the Sixth Circuit's opinion on the motion concerning the accrual of consulting fees after July 31, 2019. (ECF Nos. 185, 189–90.)

## II. DISCUSSION

**A. Motion for Determination that Rotondo Continues to Earn Consulting Fees**

The IRS's Motion for Determination that Rotondo Continues to Earn Consulting Fees concerns the accrual of consulting fees after July 31, 2017. As set forth in the stipulated record, AES sent Rotondo a letter on June 27, 2017[3] purporting to terminate

---

[3] The IRS explains in its Motion for Disbursement of Funds that "[f]or simplicity's sake, the parties stipulated that the June 27, 2017 purported termination, if effective, would be effective as of July 31, 2017." (ECF No. 183, PageID.6007.)

5

the Consulting Agreements. (ECF No. 178, PageID.5825.) The parties dispute whether this termination was valid and whether Rotondo in fact breached the Agreements. They stipulate that "[t]he letter sets out the complete basis for Mr. Rotondo's alleged breach of the Purchase Agreement and Plaintiff's complete basis for terminating the Consulting Agreements based on facts known to Plaintiffs as of the date of the letter." (*Id.*)

The letter specifies two bases for Rotondo's alleged breach of the Purchase Agreements and AES's resulting termination of the Consulting Agreements. AES's response raises another argument, that Rotondo breached the Consulting Agreements by ceasing to provide consulting services. (ECF No. 180, PageID.5954.) The IRS moves the court to hold the termination of the agreements invalid and order the consulting fees accrued after July 31, 2017 be deposited with the court. (ECF No. 179, PageID.5939.) The court will address each of AES's stated bases for the termination of the agreements and the parties' arguments regarding them in turn.

**1. Failure to Transfer Customer Accounts Free and Clear of All Liens and Claims**

The first basis for termination AES specifies is rooted in the representation and warranties of the Purchase Agreement providing that the customer accounts would be transferred to AES "free and clear of all liens and claims" and that "all federal, state, municipal and other taxes that encumber or pose a threat of encumbering title to those Assets will have been satisfied or discharged to [AES's] satisfaction." (ECF No. 178-9, PageID.5919.) On August 12, 2013, Akouri Investments, LLC brought claims against Rotondo, Sellers, AES, and others in state court seeking to void the sale of the assets pursuant to the Purchase Agreements and obtain a finding that the sale of the customer accounts to AES was a fraudulent conveyance. (ECF 178, PageID.5823–24.) AES

contends that these claims asserted against it by Akouri in state court and the claims made by the IRS related to this litigation constitute material breaches of the agreement, as did the failure to disclose the existence, nature, and extent of these claims. Because "each of the Consulting Agreements provided for automatic termination 'upon Consultant's material breach of the Purchase Agreement or this [Consulting] Agreement,'" AES declares that "the Consulting Agreements—and any obligations to pay consulting fees—were terminated by their express terms at least as early as August 12, 2013, the date upon which the State Litigation was commenced." (ECF No. 178-9, PageID.5921.)

The IRS counters that Rotondo did not materially breach the agreements and that AES has waived its right to assert a breach based on these events because they occurred before the filing of this interpleader action. Regarding waiver, Akouri brought its claims in August 2013. The IRS issued its notices of levy in April and September 2013. This interpleader action was filed on October 1, 2013—at which time AES was fully aware of both Akouri's claims and the federal tax liens. AES did not claim breach in its complaint but rather sought to interplead the consulting fees that continued to accrue under the agreements. Moreover, AES continuously represented throughout the litigation of this case that the agreements remained in effect and that Rotondo continued to earn consulting fees. (*See, e.g.*, ECF No. 46, PageID.795.)

AES responds that the IRS fails to prove that AES *intentionally* relinquished its claim that Rotondo breached the Purchase Agreements. The fact that AES brought an interpleader action "to determine to whom AES was obligated to pay whatever Consulting Fees Mr. Rotondo *had* earned in no way implied that AES was waiving its

7

right to claim that Mr. Rotondo had breached the Purchase Agreements and . . . forfeited his right to be paid any additional Consulting Fees." (ECF No. 180, PageID.5960.) After all, AES contends, the statute of limitations for a breach-of-contract claim is six years, and "[a]t the time this action was filed, AES had plenty of time remaining to file a breach-of-contract claim against Rotondo." (*Id.*)

The court rejects AES's argument. The complaint did not seek to interplead only consulting fees earned in the past; it sought to interplead "'Consulting Fees' which continue to accrue." (ECF No. 1, PageID.12.) As both parties acknowledge, "[a]n 'implied waiver' is evidenced 'by a party's decisive, unequivocal conduct reasonably inferring the intent to waive.'" *CSX Transportation, Inc. v. Benore*, 154 F. Supp. 3d 541, 554 (E.D. Mich. 2015) (quoting *Reed Estate v. Reed*, 810 N.W.2d 284, 290 (Mich. Ct. App. 2011)). Indeed, "[a]n implied waiver may arise where a person has pursued such a course of conduct as to evidence an intention to waive a right, or where his conduct is inconsistent with any other intention that to waive it." *Reed*, 810 N.W.2d at 290. AES's filing of this interpleader action and repeated representations over the life of this case that Rotondo continued to earn consulting fees under the agreements is inconsistent with AES's claim of breach. By this course of conduct, AES evinced an intention to waive its right to assert this claim. Accordingly, the court will not find that the Consulting Agreements were terminated based on the alleged failure to transfer the customer accounts free and clear of all liens and claims.

### 2. Failure to Indemnify

AES's second asserted basis for the termination of the Consulting Agreements is that Rotondo breached the Purchase Agreements by failing to indemnify AES for the

8

costs and fees incurred and expended in the state and federal litigation, which it argues resulted from the material breaches. (ECF No. 178-9, PageID.5920.) The June 27, 2017 letter states that the President and Owner of AES "has repeatedly made, and hereby reiterates, his continuing demand that [Rotondo] and the Sellers immediately indemnify [AES] from and against all costs and expenses, including but not limited to attorney's fees, incurred or expended in defense and prosecution of the of the State Litigation and the Federal Litigation." (*Id.*) Counsel for Rotondo responded in a July 20, 2017 letter, challenging AES's bases for terminating the agreements and refusing to indemnify AES. (ECF No. 178-10.) When the parties were ordered to file supplemental briefing, AES was given the opportunity to deliver a refreshed indemnification demand. (ECF No. 185.) It did so on June 28, 2019 in a letter referring to the June 27, 2017 letter and "demand[ing] immediate indemnification in the amount of $396,330.27." (ECF No. 189-1, PageID.6047.)

The IRS argues that the indemnification demand in the June 27, 2017 letter was not effective because it lacked specificity in that it does not state an amount Rotondo owes. There can be no failure to indemnify based on this purported demand, the IRS argues, "because it was not possible for Rotondo to satisfy a demand lacking a dollar figure." (ECF No. 190, PageID.6059.) The IRS recognizes the refreshed demand, though, as "specific enough to trigger the indemnity." (ECF No. 190, PageID.6061.)

The IRS argues, however, that regardless of whether the June 27, 2017 letter is found to be an effective indemnification demand, Rotondo's failure to indemnify AES does not result in termination of the contracts. "The offset and indemnity themselves form the damages remedy related to [AES's] need to defend title to the customer

9

accounts. Allowing [AES] to cancel the contracts altogether overcompensates them and would work a forfeiture and an injustice that is not consistent with conventional contract law." (*Id.*, PageID.6060.)

The court agrees that Rotondo's failure to indemnify AES when demanded to do so (whenever that was) does not constitute a breach of the Purchase Agreements. Indeed, to find so would be to afford AES a windfall—allowing it to recover the costs it incurred in defending title to the customer accounts under the indemnity provision and also retain the entirety of the profits earned by the customer accounts by withholding the consulting fees owed to Rotondo. When it comes to recovery, "contract law seeks to put the plaintiff where he would be had the defendant properly performed his duty under the contract." *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 239 (6th Cir. 1994) (quoting *Nibarger v. Universal Coops., Inc.*, 486 N.W.2d 612, 615 (Mich. 1992)). Because the indemnity clause together with the Offset Provision contemplate a complete remedy for AES, putting it in the same position it would have been in if it had not needed to defend title to the customer accounts, the court rejects this basis for terminating the Consulting Agreements.

### 3. Failure to Provide Consulting Services

Third, in its response to the IRS's motion, AES raises a new argument for the termination of the Consulting Agreements. It states, "Mr. Rotondo's failure to provide AES with any consulting services defeated the essential purpose, and therefore constituted a material breach, of the Consulting Agreements." (ECF No. 180, PageID.5954.) For factual support, AES cites to the deposition of its President and Owner, Mr. Otto. (*Id.*) He testified that while Rotondo provided "quite a bit" of consulting

10

services to AES for several years after the sale of the Customer Accounts, he later stopped doing so.

The IRS replies that this argument should be summarily rejected because it is founded on evidence not contained in the stipulated factual record and which would be inadmissible at trial. The IRS notes that "the whole point of a stipulated record is to avoid there being a triable issue of fact," and if it had known AES was relying on this argument, "it would have taken Rotondo's deposition to counter Otto's testimony and a trial would be required." (ECF No. 181, PageID.5971 n.1.) Moreover, the IRS points out that in discovery it served AES with an interrogatory requesting its complete list of bases for any contention that Rotondo breached either the Purchase Agreements or Consulting Agreements. AES's response merely referred to its June 27, 2017 letter; it made no mention of Rotondo's performance or non-performance of consulting services. (*See* ECF No. 181-1.)

Because this failure-to-provide-consulting-services argument relies on facts outside of the stipulated record, the court will not entertain it. The parties agreed that the stipulated record "constitutes a complete stipulated factual record regarding the dispute over whether Defendant Rotondo has accrued any consulting fees since July 31, 2017, except as set forth in paragraph 18 below." (ECF No. 178, PageID.5822.) The stipulated record makes no mention of Rotondo's provision of (or failure to provide) consulting services.

AES contends that this information is admissible nonetheless under the paragraph 18 exceptions, which permit the parties to "refer to any document filed in this action by any party to this action as evidencing the filing of such document for such

11

purposes as showing claims asserted or notice to other parties, but not for the purpose of demonstrating the truth of any facts contained in such filings by parties." (ECF No. 189, PageID.6040; ECF No. 178, PageID.5825–26.) AES claims that because the Otto deposition is on file with the court and the IRS took his deposition, it may rely on Otto's testimony in argument.

The court disagrees. Paragraph 18 is clear that reference to documents filed in this case which are not included in the stipulated record is limited to "showing claims asserted or notice to other parties, but *not for the purpose of demonstrating the truth of any facts contained in such filings.*" (*Id.*) (emphasis added). By arguing that Rotondo breached the Consulting Agreements by ceasing to provide consulting services, AES is relying on a document outside of the record —the Otto deposition—for the truth of facts contained in that filing—that Rotondo ceased providing consulting services to AES. This is expressly prohibited by the parties' stipulated factual record, and the court will not allow it.

Similarly, AES argues in its supplemental briefing that "[w]hether or not Mr. Rotondo's failure to provide consulting services constituted a breach of the Consulting Agreements, *he is not entitled to be paid for consulting services he did not provide.*" (ECF No. 189, PageID.6041.) This argument, too, is improper. New and creative arguments going to the heart of the dispute are not properly raised in what AES titles as its "sur-reply." (*Id.*, PageID.6039.) Again, the parties agreed that the stipulated record "constitutes a *complete* stipulated factual record regarding the dispute over whether Defendant Rotondo has accrued any consulting fees since July 31, 2017." (ECF No. 178, PageID.5822) (emphasis added). There is no room for novel arguments regarding

whether Rotondo has accrued consulting fees since July 31, 2017, and the court will not permit any.

Because the court rejects each of AES's asserted bases for terminating the Consulting Agreements, the court finds that Rotondo continues to earn consulting fees under them.

### B. Motion for Disbursement of Funds Held in the Court's Registry

The IRS moves for the distribution of monies currently held in the court's registry, consistent with the Sixth Circuit's decision. (ECF No. 183.) Recall that AES deposited $223,995.09 with the court, which represented the consulting fees owed to Rotondo for the periods prior to July 31, 2017. (ECF No. 173, PageID.5811.) The court held that the IRS was entitled to these funds, and the Sixth Circuit affirmed this holding. While AES asked that the release of these funds be without prejudice to its rights to a refund should the court find AES entitled to the funds (ECF No. 186), this opinion and order forecloses that eventuality. Therefore, the court will order the funds be disbursed to the IRS without limitation.

### C. Outstanding Issues: Indemnity Amount and Offset Provision

Two final issues remain. First, the court has yet to determine whether the July 27, 2017 letter constitutes an effective indemnification demand. The Sixth Circuit held that "[a]lthough the Offset Provision allows AES to offset any sums Rotondo is obligated to pay under the Indemnification Provision, Rotondo is not obligated to pay *anything* under that provision until AES has made a demand." (ECF No. 182, PageID.5995.) The date on which AES made a proper demand, then, is also the date after which it may start offsetting Rotondo's outstanding payment obligations against the consulting fees owed

13

to him. Second, while the Sixth Circuit clarified that AES may offset both the costs of enforcing the indemnification provision and the total costs that can be indemnified, the parties disagree about what exactly falls under the indemnity obligation. The court will address each issue in turn.

The court first considers whether the July 27, 2017 letter contained a proper indemnification demand. Its relevant portion states:

> As you know, Purchasers and their affiliates incurred and continue to incur, and became obligated to pay, substantial attorney fees as a result of your material breaches of each Purchase Agreement, at least as early as Akouri's filing of the State Litigation, and also as a result of allegations made by the Service before and during the Federal Litigation. Mr. Otto has repeatedly made, and hereby reiterates, his continuing demand that you and the Sellers immediately indemnify the Purchasers from and against all costs and expenses, including but not limited to attorney's fees, incurred or expended in defense and prosecution of the of the State Litigation and the Federal Litigation.

(ECF No. 178-9, PageID.5920.) Based on this language, AES insists that "*there is no argument* that a demand was made on June 27, 2017." (ECF No. 189, PageID.6042.) The IRS, however, does make an argument. While it admits that the "letter purports to make a demand on Rotondo," the IRS argues that the letter "lacked the requisite specificity to trigger the indemnification clause . . . because it was not possible for Rotondo to satisfy a demand lacking a dollar figure." (ECF No. 181, PageID.5972; ECF No. 190, PageID.6059.) The IRS does not cite any authority for this proposition, and the court is not persuaded by this argument.

Looking to the indemnification clause itself, the Purchase Agreements state that Rotondo "will pay Purchaser *on demand* the full amount of any sum which Purchaser may pay or become obligated to pay." (ECF No. 178-1, PageID.5832.) The phrase "on demand" is defined as "[w]hen presented or upon request for payment." *Black's Law*

14

*Dictionary, on demand* (11th ed. 2019). Based on the plain and ordinary meaning of the words of the agreement, Rotondo was to pay AES "on demand," or "upon request for payment." This understanding is bolstered by the indemnification clause's inclusion of amounts AES "may . . . become obligated to pay," which is necessarily imprecise. There is no requirement that a dollar amount be provided to trigger Rotondo's indemnity obligation. Accordingly, the court finds that the June 27, 2017 letter contained a demand as required by the indemnification provision. Because the parties agreed that this letter, if effective, would take effect July 31, 2017 (since the consulting fees earned up to that date had been deposited with the court), AES may exercise its offset rights against consulting fees accrued after July 31, 2017. *See* footnote 3, *supra*.

This leaves the second issue: what precisely is included in the indemnity obligation? AES contends that it may offset its attorney fees from both the state court litigation and this case. (ECF No. 189, PageID.6043.) In its refreshed demand letter on June 28, 2019, AES identified $396,330.27 as the amount of indemnifiable losses, which it describes as "includ[ing] legal fees and costs incurred in defense and prosecution of the State Litigation and the Federal Litigation." (ECF No. 189-1, PageID.6047.) The IRS responds "that the amount of that demand is excessive" and asks the court to limit AES's offset to "an amount reasonably related to defending title to the Customer Accounts." (ECF No. 190, PageID.6062.)

Looking again to the text of the indemnification clause, it states, condensed and in relevant part, that Rotondo and Sellers will indemnify AES:

> against any loss, damage, liability or deficiency (including without
> limitation, reasonable attorneys' fees and other costs and expenses
> incident to any suit, action, investigation or other proceeding) arising out of
> or resulting from . . . any claim, litigation, or other action of any nature

15

> arising out of any act performed, transaction entered into or state of facts suffered to exist by any Seller and/or Sellers' Affiliate(s) prior to the date of Closing.

(ECF No. 178-1, PageID.5832.) It goes on to state that AES may be indemnified additionally "for and against any costs and expense (including actual attorneys' fees) which [AES] incurs to enforce the indemnification obligations." (*Id.*)

Regarding the state court litigation, the IRS agrees that amounts related to defending against Akouri's claims that AES lacked title to the customer accounts should be indemnified but asks that AES make a showing of the expenses to assure the amount requested is reasonable. (ECF No. 190, PageID.6064–66.) The IRS categorizes separately amounts related to collection proceedings on a state court judgment Akouri obtained against Rotondo, which it argues should not be included in the indemnity amount. (*Id.*) AES maintains that all expenses in the state court litigation brought by Akouri may be offset. (ECF No. 189, PageID.6038–39.) Because AES filed its supplemental briefing before the IRS established its proposed categories, though, it is unclear whether AES believes that the collection proceedings the IRS refers to are included in "the state court litigation" to be indemnified or not.

As far as the present interpleader action, the IRS proposes that AES should be indemnified for only the fees involved in drafting the complaint and depositing the money, not the rest of the extensive litigation involved in this case. (ECF No. 190, PageID.6064–66.) AES, on the other hand, contends that all expenses in this action may be offset. (ECF No. 189, PageID.6038–39.) The court has already found that AES is entitled to attorneys' fees in this action because it arises out of the Purchase Agreements and is related to a "state of facts suffered to exist by" Rotondo—namely,

his unpaid tax liabilities. (ECF No. 135, PageID.4839.) The Sixth Circuit echoed this reasoning it its opinion, affirming that "[t]he Indemnification Provision may indeed encompass expenses incurred in this ligation since Rotondo owed taxes and did not pay his loan before the deal closed." (ECF No. 182, PageID.5993.)

The IRS acknowledges these rulings but invites the court to find only some of the costs of this action indemnifiable. (ECF No. 190, PageID.6062–64.) It argues that "while this action may partly involve title issues raised by Akouri for which some indemnification may be appropriate . . . [t]he issue of priority as among creditors of Rotondo who claim liens on his consulting fee rights is not properly within the indemnity provision." (*Id.*) Furthermore, the IRS requests the court to require AES to show how the amount demanded is derived from various categories of work on this case. The amounts related to this interpleader action that may be indemnified, the IRS believes, "should be limited to the reasonable costs of drawing up the complaint and depositing the funds." (*Id.*, PageID.6064.) This would exclude the resources AES expended "arguing for their ability to deduct attorneys' fees before any indemnity demand was made" and "arguing that the United States had priority over Akouri (which was unnecessary as it is not the proper task of a stakeholder to help one claimant beat another)." (*Id.*, PageID.6063–64.) Additionally, the IRS argues that case law cuts against allowing interpleader costs to be deducted from an amount subject to an IRS levy. (*Id.*)

Given that these arguments raised by the IRS in its supplemental briefing are not entirely frivolous and have potentially significant consequences, the court will give AES the opportunity to respond to them. The IRS will then be allowed to reply. The briefing

17

on this issue should be narrowly tailored to address the specific question of the contours of the indemnity obligations in light of the courts' rulings.

### III. CONCLUSION

IT IS ORDERED that the IRS's Motion for Determination that Dino Rotondo Continues to Earn Consulting Fees (ECF No. 179) is GRANTED.

IT IS FURTHER ORDERED that the IRS's Motion for Disbursement of Funds Held in the Court's Registry (ECF No. 183) is GRANTED, and a separate order will issue directing the Clerk of the Court to disburse the monies deposited in the court registry to the IRS.

IT IS FURTHER ORDERED that AES is DIRECTED to file a response to the IRS's proposed categorization of indemnifiable fees by **Friday, September 20, 2019**. The IRS will be permitted to file a reply by **Friday, October 11, 2019**.

    s/Robert H. Cleland
    ROBERT H. CLELAND
    UNITED STATES DISTRICT JUDGE

Dated: August 29, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 29, 2019, by electronic and/or ordinary mail.

    s/Lisa Wagner
    Case Manager and Deputy Clerk
    (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\13-14519.AES-APEX.GrantingMotionforDetermination.GrantingDisbursementofFunds.docx