**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

AES-APEX EMPLOYER SERVICES, INC.,
and AES-APEX EMPLOYER SOLUTIONS, INC.,

      Plaintiffs,

v.                                                                  Case No. 13-14519

DINO ROTONDO, RICHARD MARK, and
UNITED STATES DEPARTMENT OF TREASURY
INTERNAL REVENUE SERVICE,

      Defendants,

and

AKOURI INVESTMENTS, L.L.C.,

      Intervenor.

_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' REQUEST FOR
INDEMNIFICATION AND DIRECTING THE PARTIES TO SUBMIT A PROPOSED
ORDER OF JUDGMENT**

      Plaintiffs AES-APEX Employer Services, Inc., and AES-APEX Employer

Solutions, Inc., ("AES") filed this interpleader action in 2013. (ECF No. 1.) It was

removed to federal court and has been heavily litigated since. (*Id.*) After five opinions,

two appeals, and affirmation by the Sixth Circuit, a final issue remains to be decided:

the amount of indemnification Plaintiffs are owed in attorney fees. (ECF Nos. 135, 149,

153, 160, 170, 182, 185, 191.) Defendant Internal Revenue Service ("IRS") and

Plaintiffs have submitted supplemental briefing on the matter. (ECF Nos. 193, 194.) The

court finds a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons provided

below, the court will grant Plaintiffs' request for $389,998.73 in attorney fees.

## I.  BACKGROUND

The court and the parties have extensively set forth the tangled facts of this case, familiarity with which facts is presumed. (*E.g.*, ECF No. 83, PageID.2666-74; ECF No. 191, PageID.6069-72.) The court will not elaborate on such, but limit reference to the facts pertinent to the remaining issue now before the court.

Plaintiffs purchased the assets of five companies owned and controlled by Defendant Dino Rotondo ("Purchase Agreement"). (ECF No. 83, PageID.2671-72; ECF No. 182, PageID.5990; ECF No. 178, PageID.5822, ¶ 1.) As part of the agreement, Plaintiffs agreed to pay Rotondo consulting fees. (ECF No. 182, PageID.5990; ECF No. 178, PageID.5823, ¶¶ 4-5.) The fees were calculated as a percentage of the sales generated as a result of Plaintiffs' asset purchases. (ECF No. 178, PageID.5823, ¶ 5.)

After Plaintiffs' purchase of Rotondo's corporate assets, the IRS gave notice of federal tax liens on Rotondo's property and rights to property. (*Id.*, ¶ 6.) The IRS sought collection of Rotondo's consulting fees as recovery for Rotondo's unpaid taxes. (*Id.*, PageID.5825, ¶¶ 11-12.)

Intervenor Akouri Investments, L.L.C., then filed in state court a claim against Rotondo, Rotondo's businesses, Plaintiffs, and Plaintiffs' owner. (*Id.*, PageID.5823-24, ¶ 7.) Intervenor attempted to void the sale of Rotondo's business assets to Plaintiffs and claimed that the transfer was a fraudulent conveyance and constituted tortious interference, conversion, and unjust enrichment. (*Id.*, PageID.5824, ¶ 8.) Plaintiffs moved for summary disposition in state court, and Intervenor's claims against Plaintiffs and Plaintiffs' owner were dismissed. (*Id.*, ¶ 9-10.)

Plaintiffs filed the instant interpleader suit against Defendants Rotondo, IRS, and Richard Mark to determine to whom Rotondo's consulting fees are owed. (ECF No. 1.) Intervenor joined the action, attempting to claim rights to the fees. (ECF No. 33.) Eventually, the court granted summary judgment in favor of the IRS. (ECF No. 135.) The IRS obtained priority over the other claimants and is now entitled to Rotondo's fee income. (*Id.*) Plaintiffs deposited $308,957.96 of Rotondo's consulting earnings with the court and in August 2019, the court ordered distribution of those funds to the IRS. (ECF No. 173; ECF No. 191, PageID.6085.) However, the court also found that consulting fees Plaintiffs owe above and beyond the $308,957.96 already deposited can be offset by Plaintiffs' attorney fees. (ECF No. 191, PageID.6085.)

In the Purchase Agreement, Plaintiffs obtained indemnification for legal costs. The provision states:

> Each Seller and Guarantor covenant and agree that, regardless of any investigation at any time made by or on behalf of Purchaser or of any information Purchaser may have in respect thereof, the Sellers and Guarantors will jointly and severally indemnify and hold harmless Purchaser from, for and against any loss, damage, liability or deficiency (including without limitation, *reasonable attorneys' fees* and other costs and expenses incident to any suit, action, investigation or other proceeding) arising out of or resulting from, and will pay Purchaser on demand the full amount of any sum which Purchaser may pay or become obligated to pay on account of . . . (iv) any claim, litigation or other action of any nature arising out of any act performed, transaction entered into or state of facts suffered to exist by any Seller and/or Sellers' Affiliate(s) prior to the date of Closing.

(ECF No. 178-1, PageID.5832 (emphasis added).) The final issue before the court is the extent to which Plaintiffs can offset amounts owed to Rotondo, and thus the IRS, in consulting fees as indemnification for Plaintiffs' legal costs.

## II.  DISCUSSION

Plaintiffs must first demonstrate that legal fees are subject to the indemnification clause. The indemnification clause covers fees from "any claim, litigation, or other action of any nature arising out of any act performed, transaction entered into or state of facts suffered to exist by any Seller and/or Sellers' Affiliate(s) prior to the date of closing." (ECF No. 178-1, PageID.5832.) The court and the Sixth Circuit have interpreted this provision as requiring compensation where Plaintiffs were required to expend attorneys' fees due to a "state of facts suffered to exist" by Rotondo. (*Id.*; ECF No. 191, PageID.6083-84 (citation removed) ("The court has already found that [Plaintiffs] [are] entitled to attorneys' fees in this action because it arises out of the Purchase Agreements and is related to the state of facts suffered to exist by Rotondo."); ECF No. 182, PageID.5993 (The Sixth Circuit: "The Indemnification Provision may indeed encompass expenses incurred in this litigation since Rotondo owed taxes and did not pay his loan before the deal was closed."); ECF No. 135, PageID.4839 (citation removed) ("[T]his action is related to a state of facts suffered to exist by Rotondo.").) Further, the action must have taken place prior to the Purchase Agreement's closing, March 28, 2013. (ECF No. 178-1, PageID.5832 (indemnification clause); *id.*, PageID.5838-39 (Purchase Agreement signatures).)

Plaintiffs seek compensation for three categories of legal expenses: 1) costs incurred defending Intervenor's state court suit against Plaintiffs, with its attempt to invalidate the Purchase Agreement; 2) other costs due to involvement in Intervenor's state court litigation, including Intervenor's attempt to collect on amounts owed by

Rotondo to Intervenor; and 3) costs litigating this interpleader suit. The court will address each category in turn.

### A. State Court Claims Against Plaintiffs

Plaintiffs seek $123,414.49 spent defending its asset purchases and defending Intervenor's claims directed at Plaintiffs. (ECF No. 193-1, PageID.6100 (Plaintiffs' breakdown of costs).) The IRS does not contest this amount. The state of facts underlying Intervenor's claim against Plaintiffs, i.e., a loan by Intervenor to Rotondo and his companies, came about due to Rotondo's actions in securing the loan, and occurred before March 28, 2013. (ECF No. 45, PageID.710-42 (Intervenor's state court complaint); *id.*, PageID.598-600 (Intervenor's loan agreements).) The loan was executed on May 1, 2011. (ECF No. 45, PageID.710-42.) The court will grant Plaintiffs' request for indemnification related to defending Intervenor's state court claims.

### B. State Court Litigation Generally

Plaintiffs seeks an additional $32,505.00 in legal fees resulting from Intervenor's state court litigation, but not tied directly to defending against Intervenor's claims against Plaintiffs. (ECF No. 193-1, PageID.6100.) Despite being dismissed from the lawsuit on February 12, 2015, Plaintiffs assert that they were forced to stay involved in the case through motion practice, appeals, and attempts at post-judgment relief. Some of these expenses are included in the first category, money spent defending Intervenor's claims against Plaintiffs. (*Id.* (Category #3 expenses after February 12, 2015.).) However, other expenses were related to Intervenor's underlying claims against Rotondo. The IRS now attempts to exclude all legal costs related to Intervenor's efforts to collect on its loan to

Plaintiff. For instance, the IRS argues that Plaintiffs should not be reimbursed for the deposition of Plaintiffs' owner, or costs incurred in complying with discovery requests.

The IRS's sole argument is that the indemnification clause in fact covers expenses caused by only Rotondo's companies and not by Rotondo himself. The IRS points to contract language that the "state of facts suffered to exist" must be by "by any Seller and/or Sellers' Affiliate(s)," and that Rotondo was listed as a guarantor and not a seller. (ECF No. 178-1, PageID.5832.) This is a distinction without substance, given that Rotondo owned and controlled the companies that sold the assets. (ECF No. 83, PageID.2671-72; ECF No. 182, PageID.5990; ECF No. 178, PageID.5822, ¶ 1.) Also, the IRS presents this argument only at the conclusion of a protected, heavily contested litigation. This court has already interpreted the indemnification clause to cover the "state of facts suffered to exist" by Rotondo and has not been called upon to drill into the mundane (and mostly insignificant) differences between the acts of Rotondo and the acts of his companies. (ECF No. 191, PageID.6083-84 (citation removed) ("The court has already found that [Plaintiffs] [are] entitled to attorneys' fees in this action because it arises out of the Purchase Agreements and is related to the state of facts suffered to exist by Rotondo."); ECF No. 135, PageID.4839 (citation removed) ("[T]his action is related to a state of facts suffered to exist by Rotondo.").)

The Sixth Circuit implicitly accepted this reading, finding that *Rontondo*'s failure to pay taxes and *Rotondo*'s failure to pay loans would trigger indemnification if litigation resulted, also adding that Plaintiffs must make a proper demand. (ECF No. 182, PageID.5993.) The court stated: "The Indemnification Provision may indeed encompass expenses incurred in this litigation since Rotondo owed taxes and did not pay his loan

before the deal was closed." (*Id.*) Nowhere did the court assert or imply that Plaintiffs could receive indemnification only if Plaintiffs were able to intricately trace the litigation solely to the acts of Rotondo's corporations.

The IRS's argument also conflicts with its own position, admitting indemnification for state court claims against Plaintiffs. It is hard to understand the distinction between litigation costs incurred in defending claims aimed directly at Plaintiffs and those incurred due to the relevance of the Purchase Agreement to claims against Rotondo and Rotondo's companies. The IRS admits that the indemnification clause is triggered when a third party sues Plaintiffs, claiming that the Purchase Agreement harms its interests in a loan made to Rotondo. With that, it is difficult to see how other litigation expenses—incurred concerning claims made directly against Rotondo and using the same loan document—are not included. (ECF No. 45, PageID.710-42 (Intervenor's complaint, basing claims against Plaintiffs, Rotondo, and Rotondo's companies on Intervenor's loan).) The court discerns no reason to limit Plaintiffs' indemnification solely to those costs incurred to defend Intervenor's claims against Plaintiffs. All costs incurred in the state court litigation were caused by the "state of facts suffered to exist" by Rotondo and as such are subject to the indemnification clause. (ECF No. 178-1, PageID.5832.)

Even if the court were to entertain the IRS argument and analyze the source of Intervenor's lawsuit, it is not at all clear that the IRS would prevail. The loan on which Intervenor attempted to collect in the state court litigation obligated Rotondo, in the general sense. However, the record demonstrates that the loan was alleged to have been made to one of Rotondo's companies, secured by Rotondo's companies, and

guaranteed by Rontondo. (ECF No. 45, PageID.714-15, ¶¶ 24-34 (Intervenor's complaint alleging that the relevant loan was made to a corporation 100% owned by Rotondo, secured by corporations 100% owned by Rotondo, and signed in an individual and corporate capacity by Rotondo); *id.*, PageID. 598-600 (Intervenor's loan agreement entered into by one of Rotondo's companies, signed by Rotondo); *id.*, PageID.614-17 (guaranty agreement entered into by a Rotondo company and signed by Rotondo); *see also* ECF No. 110, PageID.3636 (adopted Report and Recommendation granting the IRS's motion for summary judgment: "Rotondo signed all of the loan agreements, promissory notes, security agreements, and guaranties in his individual capacity and/or corporate capacity.").) It is clear to this court that the entire litigation was caused by a "state of facts suffered to exist" by Rotondo's companies, with Rotondo individually playing only a part, which would largely conform to the IRS's own stance on the matter regarding Intervenor's claims against Plaintiffs. (ECF No. 178-1, PageID.5832.)

Further, even if the court were to apply the IRS standard and even if the IRS demonstrated that the state court litigation came about *solely* as a result of Rotondo's acts outside his position of corporate maestro, the IRS argument would still fail. The "state of facts suffered to exist" by Rotondo's companies encompasses the owner and controller of the companies taking on substantial debt and subjecting Plaintiffs to litigation costs. (ECF No. 178-1, PageID.5832.) The litigation was directly tied to the Purchase Agreement and involved an investigation into the propriety of the asset sale and Rotondo's intent during the contract's negotiation and execution. (*E.g.*, ECF No. 45, PageID.730 (Intervenor's state court complaint: "Rotonodo . . . knew or should have known that the lien held by [Intervenor] was properly perfected and secured . . . . The

assets sold [to Plaintiffs] were not sold in good faith, and were sold with full knowledge that [Intervenor] did not execute any subordination agreement and/or permission to sell assets.").)

The word "suffered" in the phrase "state of facts suffered to exist" is not a restrictive term. It applies to all those events Plaintiffs was "submit[ed] to or . . . forced to endure." *Suffer*, Merriam-Webster Dictionary (last visited April 24, 2020), https://www.merriam-webster.com/dictionary/suffer; *Weiss v. St. Paul Fire and Marine Ins. Co.*, 283 F.3d 790, 796 (6th Cir. 2002) (Under "normal contract rules," "[t]he court is to give the terms of [a] contract their plain and natural meaning."); *Burdett Oxygen Co. of Cleveland v. Employers Surplus Lines Ins. Co.*, 419 F.2d 247, 248 (6th Cir. 1969) (describing foundational theories of contract interpretation). If the indemnification clause applies only to Rotondo's companies, Plaintiffs were "submit[ed]" and "forced to endure" the financial problems of *the companies'* highly indebted owner and controller. The companies obtained Rotondo as an agent and lead negotiator for the Purchase Agreement and it was Rotondo's involvement in the deal that subjected Plaintiffs to litigation costs. (ECF No. 45, PageID.598-600 (loan agreement signed by Rotondo); ECF No. 110, PageID.3638 (Report and Recommendation: "Rotondo began negotiating an asset sale with [Palintiffs' owner].").) The IRS, standing in for Rotondo, cannot play hide and seek with corporate entities, dodging indemnification simply because litigation costs are caused directly by Rotondo, but "forced" upon Plaintiffs due to Rotondo's participation in an agreement between Plaintiffs and Rotondo's companies.

The court will accept Plaintiffs' indemnification request for the full amount of legal resources expended in its involvement in Intervenor's lawsuit, whether each hour billed

was related to claims against Plaintiffs or Rotondo. Plaintiffs will be able to offset an additional $32,505.00.

### C.  Plaintiffs' Interpleader Litigation

Plaintiffs seek $214,284.87 for legal expenses incurred in this litigation. (ECF No. 193-1, PageID.6100-01.) Plaintiffs also seek indemnification for $19,794.37 in fees "related to the interpleader case" but not expressly categorized under the "Federal Interpleader" matter. (*Id.*) As the court explained in its August 2019 opinion, this action "arises out of the Purchase Agreements and is related to a state of facts suffered to exist by Rotondo—namely, his unpaid tax liabilities." (ECF No. 191, PageID.6083-84.) The Sixth Circuit agreed, reasoning that "Rotondo owed taxes and did not pay his loan before the [Purchase Agreement] closed," the factual predicates to the current lawsuit. (ECF No. 182, PageID.5993.) The IRS also agrees and accepts that Plaintiffs are owed compensation for their costs, but only to a limited extent. The IRS contends that the indemnification clause covers only $6,225.00 of Plaintiffs' legal fees, those associated with writing the interpleader complaint and writing a check to deposit funds.

Noticeably, the IRS does not argue that Plaintiffs' fee calculations are inaccurate or inflated. Instead, it claims *no* expenses outside of rudimentary interpleader obligations should be covered. However, this theory is not tied to or supported by the text of the indemnification clause. The clause does not state that Plaintiffs "shall be indemnified only for those minimal costs necessary to accomplish the rudimentary aspects of subsequent litigation," e.g., drafting and filing a complaint. The clause states Plaintiffs shall be indemnified "for and against *any* loss, damage, liability or deficiency," for "reasonable attorneys' fees and other costs and expenses *incident to any* suit,

10

action, investigation or other proceeding," and for "the full amount of *any* sum which Purchaser may pay or become obligated to pay" in litigation "arising out of or resulting from" Rotondo's actions. (ECF No. 178-1, PageID.5832 (emphasis added).) "Any" cost and costs "incident" to "any" lawsuit are commonly understood to be expansive terms. (ECF No. 178-1, PageID.5832.) Merriam-Webster defines "any" in this context as "unmeasured or unlimited in amount, number, or extent" and "incident" as "dependent on or relating to another thing." *Any*, Merriam-Webster Dictionary (last visited April 24, 2020), https://www.merriam-webster.com/dictionary/any; *Incident*, Merriam-Webster Dictionary (last visited April 24, 2020), https://www.merriam-webster.com/dictionary/incident. Costs "relating to" a lawsuit and encompassing an "unmeasured . . . amount" certainly extends beyond the bare minimum required to litigate an interpleader action. Plaintiffs are entitled to attorney fees beyond the IRS's suggested strict limits.

Nonetheless, the IRS claims at least some of the fees were a result of Plaintiffs' involvement with the claims of Rotondo's competing creditors, including Rotondo's tax lein, and thus were a result of facts brought into existence by Rotondo and not Rotondo's companies. The IRS relies on the same interpretation of the indemnification provision the court rejected with regards to the Plaintiffs' state court litigation. The court and the Sixth Circuit have already found that this litigation is covered by the indemnification clause, based as it was on facts "suffered to exist by Rotondo" and involving tax liens and various loans made to Rotondo and his companies. (ECF No. 191, PageID.6083-84; ECF No. 182, PageID.5993; ECF No. 135, PageID.4839.) In fact, the Sixth Circuit referred explicitly to the fact that "Rotondo owed taxes and did not pay

11

his loans" when it stated Plaintiffs may be indemnified. (ECF No. 182, PageID.5993.) The IRS's argument is, yet again, inconsistent with its other stances. Filing an interpleader complaint to resolve disputes between Rotondo's creditors is covered, it seems, but any greater involvement by Plaintiffs based on the same liabilities, e.g., providing reasonable accounting, is not. The court does not find the argument convincing.

The IRS also includes an argument that, as a matter of law, attorney fees cannot be used to offset a federal tax lien. The IRS cites two cases from two circuits, the Seventh and the Eighth, that concern priority of rights for awards of attorney fees after a lien by the IRS is perfected under federal law. With precedent that is actually binding and a more substantive argument, it is possible this claim would have merit. Nonetheless, this court and the Sixth Circuit have already decided that attorney fees incurred by Plaintiffs can be offset, despite the fact that Rotondo's consulting fees will go to the IRS due to a perfected tax lien. The breath of the IRS's claim would be significant. If the IRS were correct, Plaintiffs could not recover *any* attorney fees from amounts owed to the IRS vis-à-vis Rotondo's consulting fees because any claim for attorney fees would thus be *de facto* superior to the IRS lien. Yet the IRS already admits that Plaintiffs may recover $123,414.49 in state court litigation fees and $6,225.00 in this litigation. The courts have ruled Plaintiffs have a right to offset attorney fees and the IRS has agreed. The court will not unsettle an established finding.

More substantively, the IRS claims that Plaintiffs incurred unnecessary legal expenses in litigating issues in which Plaintiffs did not need to get involved. The IRS asserts Plaintiffs should not be reimbursed for litigating Plaintiffs' automatic deduction of

attorney fees, the priority of Rotondo's creditors, deduction of Plaintiffs' attorney fees before a demand for indemnification was made, and Plaintiffs' deposit of consulting fees with the court.

The indemnification clause does specify that Plaintiffs' are entitled to "reasonable" attorney fees. (ECF No. 178-1, PageID.5832.) Furthermore, general contract principles imply a covenant of good faith and fair dealing. Restatement (Second) of Contracts § 205 (Am. Law Inst. 1981); *see, e.g.*, *Kinzel v. Bank of Am.*, 850 F.3d 275, 283 (6th Cir. 2017); *State Auto Props. and Cas. Ins. v. Hargis*, 785 F.3d 189, 196 (6th Cir. 2015). Plaintiffs cannot obtain compensation for any and all litigation fees that result from Rotondo's actions prior to closing the Purchase Agreements. They cannot take advantage of a situation, Plaintiffs knowing that they will be indemnified while piling on unreasonable attorney fees in bad faith. Without the "reasonable" limitation on fees, the indemnification provision would create perverse incentives, a massive moral hazard, and threaten the consulting fee consideration for which Rotondo rightfully contracted. *See, e.g.*, *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 178 (6th Cir. 1996) ("[B]y making it more difficult for insurance companies to deny liability in cases of arson, it is clear that the ultimate effect of this rule would be to encourage arson for profit.").

Nonetheless, the sweep of the indemnification clause is broad. It covers *any* litigation expenses incurred as a result of Rotondo and expenses *incidental* or related to such litigation, so long as those costs are themselves "reasonable." (ECF No. 178-1, PageID.5832.) There is no indication that the indemnification clause somehow limited or prevented Plaintiffs from litigating their ability to automatically offset attorney fees, the

priority of creditors with whom Plaintiffs would have to engage in payment of Rotondo's consulting fee income, the timing of when an attorney fees offset can be made, and the timing of a deposit with the court.[1] These are issues related to litigation caused by Rotondo: his failure to pay debts and taxes. (*Id.*) Plaintiffs are entitled to reasonable attorney fees that result. (*Id.*) The IRS does not contest the reasonableness of the fees themselves; the IRS does not claim that Plaintiffs overstate services provided, or that the fees were calculated in a bad faith manner. Restatement (Second) of Contracts § 205 (Am. Law Inst. 1981). (ECF No. 178-1, PageID.5832.) What the IRS challenges is the category of litigation issues in which Plaintiffs can be involved and for which they can be indemnified. The court sees no such categorical limitations in Rotondo's indemnification guarantee. It was Rotondo's responsibility to negotiate legally enforceable contract terms and Rotondo agreed to an extensive indemnification right. The IRS cannot now limit the indemnification for which Plaintiffs contracted.

Plaintiffs are entitled to the entirety of the reasonable legal fees incurred in this lawsuit, $214,284.87. The IRS does not differentiate in its arguments between those

---

[1] The IRS attempts to make a distinction between litigation issues in which Plaintiffs were successful and those that were unsuccessful. Although the IRS cites to no caselaw or statute for this contention and merely references "concept[s] . . . in the law," there are indeed times when only prevailing parties can obtain attorney fees. *E.g.* Fed. R. Civ. P. 37(a)(5) (allowing payment of fees to the prevailing party in a motion to compel discovery); *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Resources*, 532 U.S. 598, 602-03 (2001) ("Congress . . . has authorized the award of attorney's fees to the 'prevailing party' in numerous statutes," including the Fair Housing Amendments Act and the Americans with Disabilities Act). Nonetheless, the IRS makes no claim that such a limitation is included in the contract at issue. It is the Purchase Agreement that defines Plaintiffs' rights to indemnification, and it contains no language preventing recovery for attorney fees if Plaintiffs are not the prevailing party in a given motion. (ECF No. 178-1, PageID.5832.) Instead, the clause contains broad language covering "any" legal expenses "incident" to litigation caused by Rotondo. (*Id.*)

costs and the $19,794.37 "associated with the interpleader case" but not expressly classified under the "Federal Interpleader" subject matter. Considering the matter resolved in favor of Plaintiffs, Plaintiffs are entitled to the total amount of fees Plaintiffs account to this interpleader action, $234,079.24.

## III. CONCLUSION

Plaintiffs have a right to indemnification for litigation caused by Rotondo's actions. The court, the parties, and the Sixth Circuit all agree. Plaintiffs may offset attorney fees incurred as a result of Intervenor's state court litigation and this lawsuit. Although the IRS disputes the extent of compensation due, the court will grant Plaintiffs request for $123,414.49 defending Intervenor's state court claims against Plaintiffs, $32,505.00 additional expenditures in state court, and $234,079.24 as a result of this lawsuit. Plaintiffs may offset a total of $389,998.73. Accordingly,

IT IS ORDERED that Plaintiffs' request for indemnification is GRANTED. Plaintiffs may offset $389,998.73 in attorney fees.

It appears to the court that all outstating issues have now been resolved and the case is ready to be closed. Thus, IT IS ORDERED that the parties are DIRECTED to submit a proposed order of judgment, stipulated as to form, by **May 1, 2020**.

s/Robert H. Cleland                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 24, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 24, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                        /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\13-14519.ROTONDO.Indemnification.RMK.RHC.4.docx